# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **v.** | |
| **KENNETH SMUKLER** | **NO.  17-563-02** |

**DuBois, J.**                                                    **July 31, 2018**

# M E M O R A N D U M

## I.	INTRODUCTION

On October 24, 2017, a federal grand jury in the Eastern District of Pennsylvania named defendant Kenneth Smukler and co-defendant Donald "D.A." Jones in a six count Indictment charging violations of the Federal Election Campaign Act ("FECA").  On March 20, 2018, the Government filed a Superseding Indictment charging additional violations of FECA.  The Superseding Indictment charges Smukler with: participation in a conspiracy in violation of 18 U.S.C. § 371 (Count I); causing unlawful campaign contributions in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i), 30116(f), and 18 U.S.C. § 2 (Counts II & VII);  causing false campaign reports in violation of 52 U.S.C. §§§  30104(a)(1), 30104(b)(5)(A), 30109(d)(1)(A)(i), and of 18 U.S.C. § 2 (Counts III, IV & X); causing false statements in violation of 18 U.S.C. §§ 2 and 1001(a)(1) (Count V & VI); making contributions in the name of another in violation of 52 U.S.C. §§ 30109(d)(1), 30116(f), 30122, and 18 U.S.C. § 2 (Counts VIII & IX); obstruction of a pending agency proceeding in violation of 18 U.S.C. §§ 2 and 1505 (Count XI).

Presently before the Court are the following Motions: (1) Defendant Kenneth Smukler's Motion to Dismiss Count Two Under the Statute of Limitations; (2) Defendant Kenneth Smukler's Motion to Dismiss Counts I-VII and IX-X of the Superseding Indictment for Failure to Allege "Contributions"

1

Under FECA; (3) Defendant's Motion to Dismiss Counts III, IV, V, X, XI for Failure to Allege that Mr. Smukler Willfully Caused Any False FEC Filings; and (4) Defendant Kenneth Smukler's Motion for a Bill of Particulars.  For the reasons that follow, the Motions are denied.

## II.    BACKGROUND

The Superseding Indictment charges defendant with campaign finance violations in connection with two congressional campaigns: (1) the 2012 congressional primary campaign of United States Representative Robert Brady ("Brady") and (2) the 2014 congressional primary campaign of Marjorie Margolies. With respect to the Brady campaign, the Government charges that defendant and his co-conspirators facilitated unlawful payments totaling $90,000 to induce Jimmie Moore—Brady's primary challenger—to drop out of the primary race.  In connection with the Margolies campaign, defendant is charged with facilitating unlawful campaign contributions through two political consulting entities which he owned and disguising those unlawful contributions as refunds of general election contributions.  The Court summarized the charges and the facts at length in its Memorandum dated July 13, 2018.  It will do so again in this Memorandum only as necessary to explain its rulings.

## III.    LEGAL STANDARD

The contents of an indictment are governed by Federal Rule of Criminal Procedure 7(c)(1), which instructs that an indictment or information "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012) (quoting Fed. R. Crim. P. 7(c)(1)).

Under Third Circuit precedent, an indictment is sufficient "so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United*

*States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.* (internal quotation marks omitted).

A district court may review the sufficiency of an indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). *Huet*, 665 F.3d at 595. Such review, however, is limited. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *Id.* (internal citations omitted). Accordingly, in evaluating a Rule 12 motion to dismiss, "a district court must accept as true the factual allegations set forth in the indictment" to determine whether "a jury could find that the defendant committed the offense for which he was charged." *Id.* at 595–96.

## IV.   DISCUSSION

### A.  Smukler's Motion to Dismiss Count Two Under the Statute of Limitations

Defendant seeks dismissal of Count Two of the Superseding Indictment on the ground that two of the three contributions identified  occurred outside the statute of limitations. The Government argues that, because one of the three alleged payments occurred within the statute of limitations—as extended by two tolling agreements—and each of the three alleged contributions were made within a single calendar year, a single count charging all three contributions is timely. The parties agree that the statute of limitations for a violation of FECA is five years. 52 U.S.C. § 30145.

Count Two charges defendant with "willfully caus[ing] contributions to the Jimmie Moore for Congress campaign in excess of the limits of the Election Act, which aggregated $25,000 and more in calendar year 2012" in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i) & 30116(f) and 18 U.S.C. § 2. Section 30116 sets forth campaign contribution limits and

§30116(f) prohibits a candidate or political committee from "knowingly accept[ing] any contribution or mak[ing] any expenditure" exceeding those limits.[1]  Section 30109(d)(1)(A)(i) sets forth the criminal penalties for such a violation and provides that: "[a]ny person who knowingly and willfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution, donation, or expenditure . . .aggregating $25,000 or more during a calendar year shall be fined . . . or imprisoned for not more than five years . . . ." 52 U.S.C. §30109(d)(1)(A)(i).

The Superseding Indictment charges that defendant and his co-conspirators agreed to and did pay $90,000 for use by Moore in paying his campaign debts and that in exchange, Moore dropped out of the primary election.  The contributions were paid in three installments, as follows:

(1) On or about June 13, 2012, defendant . . . caused VLDS to send check number 6689 in the amount of $40,000 to Carolyn Cavaness with the memo line, 'Poll'. Superseding Indict., Count I ¶ 16(m).
(2) On or about July 17, 2012, defendant . . . caused VLDS to send check number 6688 in the amount of $25,000 to cavaness with the memo line, 'Poll.' *Id.* ¶ 16(s); and
(3) On or about August 30, 2012, D.A. Jones caused D.Jones and Associates to send check number 3327 to CavaSense in the amount of $25,000 with the memo line, 'Consulting.' *Id.* ¶ 16(y).

On August 21, 2017, and September 25, 2017, defendant signed tolling agreements extending the statute of limitations with respect to the third payment in August 2012 from D.Jones and Associates.  Defendant asserts that, because the tolling agreement pertained only to the August 2012 payment—which was allegedly caused by D.A. Jones—the statute of limitations bars prosecution for the June 13, 2012, and July 17, 2012, payments, which were allegedly caused by defendant.  And defendant argues that because the grand jury could not have

---

[1] During the 2012 election cycle, the contribution limit was $2,500 per election.  Superseding Indict. Count I ¶ 9(b).

indicted him for the third payment made in August, the entirety of Count Two must be dismissed.

The Government counters that all three payments were within the statute of limitations, pursuant to *United States v. Dees*, 215 F. 3d 378 (3d Cir. 2000). In *Dees*, the Government charged defendant with violation 18 U.S.C. § 1029(a)(2), which makes it a crime to "knowingly and with intent to defraud . . . use[] . . . unauthorized access devices during any one-year period, and by such conduct obtain[] anything of value aggregating $1,000 or more during that period." 18 U.S.C. §1029(a)(2). The Government alleged that Dees made three purchases in violation of the statute, only one of which was made within the statute of limitations. Dees asserted that, because the first two payments—which fell outside the statute of limitations period—constituted offenses in themselves, he could not be prosecuted for those payments in connection with the third payment, which did fall within the statute of limitations period. *Dees*, 215 F.3d at 379. Instead, he argued that each of the earlier two payments should have been charged in separate indictments. *Id.*

The Third Circuit reversed the district court's dismissal of the indictment in *Dees,* explaining that "inasmuch as the offense is defined as activity 'during any one-year period,' the offense is complete as to any one-year period when there is or are unauthorized uses of access devices and the aggregated value of things obtained through the use of those access devices within the one-year period ending on its last day equaled or exceeded $1,000." *Dees*, 215 F.3d at 380. Based on that ruling, the offense as actually charged in *Dees* was completed on the date of the last payment and the statute of limitations began running at that time.

Defendant seeks to distinguish *Dees* on the ground that the criminal statute under which Dees was charged specifically provided for the aggregation of amounts within a one-year period

whereas the underlying criminal statute in this case—§ 30116—does not.  In this case, the

Government relies on § 30109(d)(1)(A)(i) in conjunction with § 30116 in charging defendant

with making unlawful campaign contributions.  It is § 30109(d)(1)(A)(i), entitled "Penalties,"

that provides for aggregation within a one-year period.  Defendant argues that the calendar year

aggregation matters *only* for penalty purposes, not for defining the crime.  The Court disagrees

with defendant and declines to read § 30116 in isolation from § 30109.

Defendant cites no support for the proposition that the two provisions—§§ 30109 and

30116—should be read in isolation.  Indeed, the legislative history of FECA and its amendments

suggest that Congress intended to criminalize payments exceeding $25,000 aggregating in a

calendar year.  In 2002, Congress passed the Bipartisan Campaign Reform Act ("BCRA"), which

amended FECA.   According to its sponsors, one purpose of the BCRA's amendments to FECA

was to "make[] knowing and willful violations of the act involving at least $25,000 in a year a

felony."  *See Constitution and Campaign Reform, Hearing on Bipartisan Campaign Reform Act*

*of 2002 Before Senate Committee on Rules and Administration*, 107th Cong. 172–173 (2000)

(statement of Senator Fred Thompson); *see also id.* at 175 (statement of Senator Joe Lieberman)

("The bill would allow felony prosecutions only if, first, the defendant knowingly and willfully

violated the law . . .  and second, if the offense involved at least $25,000.").

To that end, § 30109 is the only place in FECA that proscribes criminal liability for

violations of FECA.[2]  Violations of FECA provisions merit criminal punishment only if such

violations are committed "knowingly and willfully." 52 U.S.C. § 30109(d)(1)(A)(i); *see* Daniel

Murner et. al., *Election Law Violations*, 55 Am. Crim. L. Rev. 1001, 1004 (2018).  It is a

misdemeanor offense to violate any provision of FECA which involves the making, receiving or

reporting of any contribution, donation, or expenditure "aggregating $2,000 or more (but less

---

[2] This section also sets forth the procedure for civil enforcement of FECA violations.

than $25,000) during a calendar year." 52 U.S.C. § 30109(d)(1)(A)(ii).  Violations of $25,000 or

more aggregating in a calendar year constitute a felony offense.  52 U.S.C. § 30109(d)(1)(A)(i);

*see* Harry Brewster et al., *Election Law Violations*, 50 AM. CRM. L. REV. 765 (2013).

FECA makes it a felony offense to "knowingly and willfully commit[] a violation of any

provision of [FECA] which involves the making, receiving, or reporting of any contribution,

donation, or expenditure . . .aggregating $25,000 or more during a calendar year."  52 U.S.C. §

30109(d)(1)(A)(i).  The Court agrees with the Government that *Dees* governs this case and that

"inasmuch as the offense is defined as activity 'during any one-year period' the offense is

complete as to any one-year period" on the date of the last contribution identified in the calendar

year 2012. *Dees*, 215 F.3d at 380. The Government properly charged that defendant and his co-

conspirators caused payments aggregating at least $25,000 in a calendar year, between June 2012

and August 2012.[3]  *See also United States v. Sanderson*, 966 F.2d 184, 189 (6th Cir. 1992)

(holding that for violation of 18 U.S.C. § 666, "where multiple conversions are part of a single

scheme, it seems appropriate to aggregate the value of property stolen in order to reach the

$5,000 minimum for prosecution"); *United States v. Webb*, 691 F.Supp.1164, 1168  (same).

Defendant Kenneth Smukler's Motion to Dismiss Count Two Under the Statute of

Limitations is denied for all of the foregoing reasons.

**B. Smukler's Motion to Dismiss Counts I-VII and Counts IX-X of the Superseding
Indictment for Failure to Allege "Contributions" Under FECA**

Defendant moves to dismiss Counts I–VII and IX–X of the Superseding Indictment,

asserting that the Government failed to allege that the payments at issue in those counts are

"contributions" under FECA.  Counts I–V charge violations of FECA in connection with the

---

[3] Defendant also asserts that *Dees* is inapplicable because the third payment was made by Jones, not by defendant himself.  However, the Government has charged defendant with violating §§ 30109(d)(1)(A)(i) and 30116(f) *and* 18 U.S.C. §2.  In asserting liability under 18 U.S.C. § 2, the Government seeks to hold defendant responsible not only for the two payments that he made through his entities, but for the conduct of his co-conspirators.

Brady for Congress Campaign, while Counts VI, VII, IX – X pertain to the Marjorie 2014 campaign.  The Court address defendant's arguments with respect to each campaign in turn.

       i.      <u>Brady for Congress – Counts I–V</u>

Counts I–V of the Superseding Indictment charge offenses related to the Brady campaign.  The Superseding Indictment alleges that defendant and his co-conspirators agreed to pay $90,000 to Moore in exchange for his agreement to withdraw from the primary election race, which Moore did on February 29, 2012.  Count Two charges defendant with willfully causing contributions to the Moore campaign, and Counts Three, Four, and Five charge defendant with willfully causing the Moore and Brady campaign to file false FEC reports by mischaracterizing or failing to report those contributions altogether.  And Count One charges a conspiracy to accomplish these unlawful ends.

The gravamen of defendant's argument is that the payments alleged were not "contributions" because they were not "made . . . for the purpose of influencing any election," as defined by FECA.  Specifically, defendant contends that payments to induce a candidate to withdraw cannot have been made for the purpose of influencing an election, because the payments were not for the purpose of getting that candidate elected.  Moreover, defendant contends that payments made after the primary election was over and the outcome determined cannot be contributions.  The Court rejects these arguments.

FECA defines contribution as "(i) any gift, subscription, loan, advance, or deposit of money or anything of value made by any person *for the purpose of influencing any election for Federal office;* or (ii) the payment by any person of compensation for the personal services of another which are rendered to a political committee without charge for any purpose."  52 U.S.C. §30101(8)(A)(i).  The Court agrees with the Government that payments made for the purpose of

inducing a candidate to withdraw from an election for federal office are designed to influence an election—namely, by reducing the pool of candidates to ensure election of another candidate.

Defendant also argues that payments made after the conclusion of the primary election are not contributions because "there was no longer any 'election' to 'influenc[e].'" Def.'s Mot. to Dismiss for Failure to Allege Contributions at 12. Defendant recognizes that the FEC recognizes post-election payments as contributions. He urges the Court to disregard such guidance, because agency interpretations should not be afforded *Chevron* deference in criminal cases.

Defendant ignores that several courts have concluded, in criminal cases, that post-election payments to campaigns run afoul of the FECA. *See, e.g.*, *United States v. Clifford*, 409 F.Supp. 1070 (E.D.N.Y. 1976) (holding that prohibition on unlawful contributions may apply to postelection contributions made for purpose of influencing election); *United States v. Sun-Diamond Growers of California*, 941 F.Supp.1277 (D.D.C. 1996) (holding that FECA applies to postelection contributions to unsuccessful candidates)).[4] The Court agrees with those courts which have concluded that post-election payments may be contributions.

Moreover, a finding that Chevron deference to FEC interpretations does not apply to criminal actions under FECA does not necessitate a ruling that post-election payments may not be considered contributions. Defendant argues that the Court must interpret the FECA's

---

[4] Moreover, several courts have determined that "at least some amount of deference to an FEC interpretation of FECA is appropriate in criminal cases." *United States v. Boender*, 691 F.Supp.2d 833, 840 (N.D.Ill. 2010); *see also In re Sealed Case*, 223 F.3d 775 (deferring to FEC in criminal case and stating "[d]eference is due as much in a criminal context as in any other for interpretations made outside that context, such as those found in published regulations"); *Bialek v. Mukasey*, 529 F.3d 1267, 1272 (10th Cir. 2008)("We have no reason to believe that courts would not give weight to the FEC's interpretation of its governing statute, as reflected in an advisory opinion, even in a criminal case initiated by the Attorney General.")). And the Third Circuit has applied *Chevron* deference in criminal cases in other contexts. *See, e.g.*, *United States v. McGee*, 763 F.3d 304 (3d Cir. 2014) (applying *Chevron* deference to Securities and Exchange Commission interpretation in prosecution under 10b-5); *United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011) (applying *Chevron* deference to Office of Foreign Assets Control interpretation in prosecution under International Emergency Economic Powers Act)).

contributions limit as applicable only to pre-election payments pursuant to the rule of lenity. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 533 U.S. 507, 513 (2008). For the rule of lenity to apply, the statute must contain a "grievous ambiguity" that requires a court to "guess as to what Congress intended." *United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974); *Ladner v. United States*, 358 U.S. 169 (1958))). But the rule of lenity does not require that "every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." *Moskal v. United States*, 498 U.S. 103, 113 (1990) (citations omitted)).

Defendant urges the Court to adopt the narrowest possible construction of FECA's prohibition on contributions. However, even were the Court to do so, such an interpretation is insufficient to establish ambiguity. As previously stated, FECA defines "contributions" as "(i) any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. §30101(8)(A)(i). The Government alleges such a payment in this case. A contrary finding has the potential to create an exception that swallows the rule and to defeat FECA's purpose. *See United States v. Beldini*, 443 Fed. App'x 709, at *8 (3d Cir. Sept. 6, 2011) ( "No rule of construction ... requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope.") (citations omitted); *see also United States v. Otherson*, 637 F.2d 1276 (1980) ("the rule of lenity . . . cannot substitute for common sense, legislative history, and the policy underlying the statute") (citations omitted)).

Defendant also argues that the Government fails to allege that contributions were made because there is no evidence that the Moore campaign ever received the payments. Instead,

defendant states the Superseding Indictment alleges that the payments were routed to Moore personally, to Cavaness, and to various third-party vendors. As an initial matter, defendant misstates the charges set forth in the Superseding Indictment. The Government charges that the Moore campaign owed nearly $90,000 to Moore himself and approximately $35,000 to Cavaness and that defendant and his co-conspirators arranged to pay Moore $90,000 to repay those debts. Superseding Indict. ¶¶ 16(d), (e). Of those funds, approximately $21,000 was paid to third-party vendors and $19,500 to Moore directly; Moore and Cavaness retained the remainder of the funds in Cavaness's personal bank account. *Id.* at ¶¶ 16(bb)–(dd). Although the funds were never received directly by the Moore campaign, the Government charges that the funds were used to benefit the campaign by repaying campaign debts. Defendant's interpretation of those payments would permit candidates to circumvent FECA's contribution limits by simply paying the candidate or his campaign manager directly with instructions to use that money for the benefit of the campaign. Based on this analysis, the Court concludes that payments made to allow Moore to pay campaign debts constitute contributions under FECA.[5]

ii.    <u>Marjorie 2014 – Counts VI–VII, IX–X</u>

Defendant also seeks to dismiss Counts Six, Seven, Nine, and Ten of the Superseding Indictment, related to the Marjorie 2014 campaign, on the ground that the Government fails to allege contributions. Count Seven charges defendant with causing excess contributions to the Marjorie 2014 campaign through his entities BBM and InfoVoter, which were disguised as "refunds" to the campaign. Count Nine charges defendant with making a conduit contribution—a contribution in the name of another—passed through Margolies herself, to the campaign. And

---

[5] To the extent defendant argues that there it was not unlawful for Cavaness to sell consulting services or for Moore to sell the poll to the Brady campaign, the Court rejects that argument. The Government alleges that those payments were *"disguised as"* payments" for a poll that the Brady campaign already possessed and for consulting services never performed. Defendant confuses the alleged "cover story" with the criminal conduct charged in the Superseding Indictment.

Count Six charges defendant with causing the campaign to make false statements to the FEC to disguise these unlawful payments, while Count Ten charges defendant with causing the Margolies campaign to file false expenditure reports with the FEC. Defendant argues that these counts of the Superseding Indictment fail to allege contributions because: (1) payments made after the close of the election cannot be contributions; (2) the payments were not made for the purpose of influencing an election; (3) the payments were permissible vendor repayments. The Court addresses these arguments in turn.

For the reasons stated above, the Court rejects defendant's first argument—that payments after the close of the election cannot constitute contributions. *See supra*, Section B.1.

Defendant next argues that the Government fails to allege that the payments were made "for the purpose of influencing an election," because "the [G]overnment alleges that the purpose of all of those payments . . . was 'to conceal the fact that [Marjorie] 2014 had impermissibly spent contributions raised for the general election on primary election expenses' in order 'to procure the dismissal of a complaint filed with the FEC against [Marjorie] 2014.'" Def.'s Mot. to Dismiss for Failure to Allege Contributions at 18 (quoting Superseding Indictment, Count VI ¶¶ 3, 7). The Government argues that the Superseding Indictment sufficiently alleges "contributions," because it alleges that defendant caused the campaign to impermissibly spend general election funds in the primary election for the purpose of influencing the primary election in Margolies' favor. Govt.'s Resp. in Opp. to Def.'s Mot. to Dismiss for Failure to Allege Contributions at 18.

The Court agrees with the Government and concludes that the Superseding Indictment is sufficient to charge defendant with unlawful campaign contributions. The Superseding Indictment charges that May, the Marjorie 2014 campaign treasurer, informed defendant that the

campaign had run out of funds that it could permissibly spend on primary election expenses. Superseding Indictment at ¶ 9(c). Specifically, a campaign is prohibited from spending contributions raised for the general election on primary election expenses and must "use an acceptable accounting method to distinguish between contributions received for the primary election and contributions received for the general election." 11 C.F.R. § 109(e)(1). A candidate who does not prevail in a primary election race is required to refund contributions raised for the general election. 11 C.F.R. § 109(e)(3).

The Superseding Indictment charges that defendant directed May to continue spending funds, which caused the Marjorie 2014 campaign to spend funds raised for the general election on primary election expenses. *Id.* To conceal that the campaign had impermissibly used general election funds for primary election expenses, defendant obtained approximately $225,000 from a close associate which he used to reimburse the campaign. *Id.* ¶¶ 9(g),(k). In sum, the Superseding Indictment charges that defendant solicited excess campaign contributions from a close associate to allow the campaign to impermissibly spend general election funds during the primary election. Defendant's assertion that such payments were not for the purpose of influencing an election is without merit.

With respect to the defendant's argument that the FEC's express guidance permits vendor repayments and does not consider such vendor repayments to be contributions, defendant again misinterprets the Government's theory of the case and again conflates defendant's alleged cover-up with the criminal conduct charged in the Superseding Indictment. The basis of the Government's charges is that the payments were not vendor repayments but were instead unlawful campaign contributions which were concealed as vendor repayments. *See Huet*, 665

F.3d 588, 595 (3d Cir. 2012) ("In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment.") (citations omitted)).

In the alternative, defendant asserts that Count Nine should be treated as a misdemeanor. Count Nine charges defendant with causing a conduit contribution in violation of 52 U.S.C. § 30122 on the grounds that he paid Margolies $25,000 through his entity, BBM, and instructed Margolies to loan the campaign $23,750. Section 30109(d)(1)(D) provides that "any person who knowingly and willfully commits a violation of section 30122 of this title involving an amount aggregating more than $10,000 during a calendar year shall be (1) imprisoned for not more than two years if the amount is less than $25,000 . . . ." Section 30122 prohibits an individual from making a contribution in the name of another. 52 U.S.C. § 30122. Defendant asserts that the $23,750 payment from Margolies to the campaign *should* have been charged under the general prohibition on illegal contributions, rather than under the conduit contributions provision. And because the $23,750 falls below the $25,000 threshold required for felony charges under § 30109(d)(1)(A), it is defendant's position that this charge must be considered a misdemeanor.

The Court disagrees. "Prosecutors have traditionally enjoyed discretion in deciding which of multiple charges against a defendant are to be prosecuted ." *United States v. Pungitore*, 910 F.2d 1084, 1112 (3d Cir. 1990); *see also Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ("so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and *what charge to file or bring before a grand jury*, generally rests entirely within his discretion") (emphasis added)). While the Government could have prosecuted defendant under § 30109(d)(1)(A), it chose instead to prosecute defendant for this conduct under § 30109(d)(1)(D). The Superseding Indictment properly charges that

defendant made a conduit contribution by making a contribution—in the amount of $23,750—in the name of another person—Marjorie Margolies.

      iii.    <u>Conclusion</u>

For all of the foregoing reasons, defendant's Motion to Dismiss Counts I-VII and Counts IX-X of the Superseding Indictment for Failure to Allege "Contributions" is denied.

**C. Defendant's Motion to Dismiss Counts III, IV, V, VI, X, and XI for Failure to Allege That Mr. Smukler Willfully Caused Any False FEC Filings (Document No. 84)**

Defendant seeks to dismiss Counts Three through Six and Ten and Eleven, on the ground that the Superseding Indictment fails to allege that he "willfully caused" any false FEC filings. Counts Three, Four, and Five, are based on FEC reports filed by the Brady and Moore campaigns, while Counts Six, Ten, and Eleven are based on conduct related to the Margolies campaign.

      i.    <u>Brady Campaign – Counts III, IV, V</u>

With respect to the Brady allegations, defendant asserts that the Government seeks to prosecute him *indirectly* for the actions of campaign treasurers who actually filed the allegedly false reports with the FEC, whereas the Superseding Indictment fails to allege that he "gave campaign officials (or anyone else) instructions about what to write (or not write) in the FEC reports, that he knew which campaign officials were responsible for FEC filings, or that he communicated with the Brady or Moore campaigns on the subject of FEC filings in any way." Mot. to Dismiss for Failure to Allege That Mr. Smukler Willfully Caused Any False FEC Filings at 2.

Count Three charges defendant with causing the Brady campaign to file false expenditure reports with the FEC by causing the Brady campaign "to report to the FEC disbursements to

VLDS for 'Survey and Polling Services' and 'Acquisition of Cross Tabs' and a disbursement to D.Jones & Associates for 'Political Consulting' that were in fact contributions to the Jimmie Moore for Congress campaign."  Superseding Indictment, Count III ¶ 2.  Count Four charges defendant with causing the Moore campaign to file false expenditure reports by causing that campaign "to fail to report to the FEC contributions from the [Brady] for Congress campaign in the form of payment of debts owed by Jimmie Moore for Congress."  *Id.*, Count IV ¶ 2.  And Count Five charges defendant with engaging in a scheme to falsify, conceal, or cover up a material fact in a matter before the FEC through causing the false statements identified in Counts Three and Four.  *Id.*, Count V ¶ 2.

The Government does not charge defendant with directly violating the reporting provisions of FECA or with making false statements to the FEC, because he did not submit the false statements to the FEC directly.  Instead, the Government relies on 18 U.S.C. §2(b) in conjunction with 52 U.S.C. §§§ 30104(a)(1), 30104(d)(1)(A)(i), 30109(d)(1)(A)(i), and 18 U.S.C. § 1001(a)(1) in charging defendant with willfully causing the campaign treasurers to file false reports with the FEC.

18 U.S.C. § 2(b) "makes it an offense to deliberately cause another person to perform an act that would violate federal criminal law."  *United States v. Curran*, 20 F.3d 560, 565 (3d Cir. 1994); *see also United States v. Starnes*, 583 F.3d 196, 211 (3d Cir. 2009) (stating that under 18 U.S.C. §2(b), "a person who 'willfully causes' another to commit a criminal act is liable as a principal").  To charge an individual "in the federal election law context for causing an innocent intermediary to make a false statement  to the FEC, the prosecution must prove that 'defendant knew of the [political party] treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful.'"  *United States v. Trie*, 21 F.Supp. 2d

7, 13 (D.D.C. 1998) (quoting *Curan*, 20 F.3d at 569)). In *Trie*, defendant challenged the sufficiency of the indictment on the grounds that it failed to provide factual support that he knew of the reporting requirements and thus willfully caused another to violate those reporting requirements. *Id.* at 16. The district court concluded that "[w]hether Mr. Trie knew of the DNC's reporting requirement of the DNC is a matter for proof at trial and the crafting of proper jury instructions." *Id.* The *Trie* court went on to state that the indictment was sufficient, because it alleged that defendant "willfully" caused the DNC to file false reports with the FEC. *Id.* (noting that an indictment is sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and [(2)] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.") (citations omitted)).

The Superseding Indictment alleges, *inter alia*, that defendant—a political analyst and consultant—and his co-conspirators entered into an agreement whereby the Brady campaign would pay the Moore campaign $90,000 to drop out of the primary election. The Government further charges that "it was a purpose of the conspiracy to conceal these unlawful campaign contributions from the FEC . . . by routing the payments through intermediary companies and by generating false invoices to disguise the true nature of the payments." Superseding Indictment, Count I ¶ 14. To accomplish that purpose, the Superseding Indictment alleges that "the conspirators used intermediary companies . . . to conceal the payments" and further "concealed the payments by creating false invoices stating that the payments were made for the purpose of purchasing a poll from Cava Sense . . . and for the purpose of compensation for consulting services that were never actually performed." *Id.* at ¶15(b)(c)(d). Based on this conduct, the Government charges that defendant "willfully caused the authorized campaign committee" of

both the Brady and Moore campaign to make false representations to the FEC. *Id.*, Count III, Count IV.

Defendant argues that the Government is required to state that defendant gave specific instruction to the campaign's treasurers to conceal certain payments or to falsely report others and while defendant cites to a number of cases in which the government did set forth such facts in an indictment, the Government is not *required* to do so.[6] Instead, an indictment is sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and [(2)] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Trie*, 21 F.Supp. 2d at 16 (applying *Curan* to conclude that the indictment in a FECA case adequately charged defendant with willfully causing false campaign reports); *see also Huet*, 665 F.3d at 595 ("[T]he Government is not required to set forth its entire case in the indictment."). The Superseding Indictment is sufficient to charge defendant with causing false campaign reports based on allegations that he took action to conceal unlawful contributions and to subvert the obligation of the Brady and Moore campaigns to accurately report disbursements and expenditures to the FEC.[7]

---

[6] Defendant relies on *United States v. Braddock*, No. 12-cr-157, 2013 WL 4441531 (D.Conn. Aug. 14, 2013) and *United States v. Benton*, No. 4:15-cr-00103-JAJ-HCA (S.D. Iowa) in support of this proposition. That the factual scenario of those cases involved circumstances in which internal campaign employees specifically instructed finance directors to make false representations to the FEC does not render the Superseding Indictment in this case insufficient. Moreover, the purpose of imposing liability under §2(b) is to impose liability on "the actual malefactor," rather than the intermediary who "may be blameless." *Curran*, 20 F.3d. at 567; s*ee United States v. American Investors of Pittsburgh Inc.*, 879 F.2d 1087, 1096 (3d Cir. 1989)("what the . . . innocent intermediary . . . knew is immaterial for purposes of proving a §2(b) violation").

[7] Defendant also argues that the Superseding Indictment fails to clearly allege which of the FEC filing requirements the Moore Campaign is alleged to have violated. The Court disagrees. Count Four charges defendant with willfully causing the Moore Campaign to falsely omit the contributions at issue. He is charged with violating FECA provisions 52 U.S.C. §§ 30104(a)(1), 30104(b)(5)(A), and 30109(d)(1)(A)(i). Those provisions require that a campaign report the source of contributions and the recipient of expenditures. For these reasons, defendant's identical argument with respect to Count X is rejected.

ii.     <u>Margolies Campaign – Counts VI, X, XI</u>

Counts Six and Ten charge defendant with causing the campaign to make false statements to the FEC to disguise unlawful campaign contributions as vendor refunds and to file false expenditure reports with the FEC in violation of 18 U.S.C. §§ 2 and 1001(a)(1) and 52 U.S.C. §§§ 30104(a)(1), 30104(b)(5)(A), and 30109(d)(1)(A)(i).  Defendant asserts that the Superseding Indictment fails to allege that he "willfully caused" false campaign filings and statements to the FEC because the repayments were in fact refunds and thus the statements and filings were *not* false.  Mot. to Dismiss for Failure to Allege That Mr. Smukler Willfully Caused Any False FEC Filings at 2.

Defendant argues that the Superseding Indictment alleges that the Margolies campaign paid money to his political consulting entities—BBM and InfoVoter—for the provision of services.  Subsequently, those entities repaid the campaign.  That BBM and InfoVoter had allegedly already spent the money they received from the campaign is immaterial, defendant argues, because "money is fungible."  Mot. to Dismiss for Failure to Allege That Mr. Smukler Willfully Caused Any False FEC Filings at 22. Moreover, the FEC requires campaigns to report such vendor repayments as "refunds," not "contributions."  In short, defendant's argument is that the statements were "technically true."  The Court disagrees and concludes that the Superseding Indictment is sufficient with respect to these counts.

As stated previously, FECA prohibits campaigns from spending general election funds on primary expenses.  The Superseding Indictment charges that defendant learned that the Margolies campaign was running out of funds to spend on the primary election and defendant sought to circumvent this requirement by spending general election funds on primary election expenses. To do so, defendant allegedly directed the campaign treasurer to continue spending

campaign funds, despite that the campaign had run out of money that it could legally spend on the primary election.  Superseding Indictment, Count VI, ¶ 9(c).  To conceal that the campaign had unlawfully spent general election funds on the primary election, defendant solicited funding from two of his associates, which he then used to repay the campaign.  Based on these facts, the Superseding Indictment charges that the payments were not refunds within the meaning of FECA—that is, the payments were not "contributions made for the general election" which must be refunded should the candidate lose in the primary election—they were instead unlawful campaign contributions.  The Superseding Indictment goes on to allege that defendant *knew* the funds were not general election funds which had been set aside in the event that Margolies prevailed in the primary election and that, despite this knowledge, he caused the campaign to report these unlawful contributions as refunds.   The Court thus concludes that the Superseding Indictment is sufficient: it recites the statutory language, specifies the time period during which defendant caused the false statements to be made to the FEC, and sets forth the factual basis for Counts Six and Ten.  *See United States v. Serafini*, 7 F.Supp.2d 529, 538 (M.D. Pa. 1988) ("an indictment must set forth the particular falsehood with clarity along with the government's factual basis for asserting that it is false, such that a jury can determine the falsity of the statement")(citing *United States v. Tonelli*, 577 F.2d. 194 at 200 (3d Cir. 1978)); *see also United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) ("a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence").[8]

---

[8] Moreover, defendant's argument that "money is fungible" is not persuasive.  Congress clearly did not take such a view when it prohibited campaigns from spending general election funds on primary election expenses.  Defendant would have the Court undermine FECA's prohibition on spending general election funds during the primary election, because as the Government notes, "a campaign could disburse and use *all* of its primary *and* general election funds in the primary, gaining a huge advantage over primary opponents . . . . then raise more money wholly outside of FECA's fundamental purpose. . . ."  Resp. in Opp. to Mot. to Dismiss for Failure to Allege Contributions at 18.

With respect to Count Eleven, which charges defendant with "corruptly influenc[ing]" a federal agency proceeding by causing an attorney to submit a letter containing false statements to the FEC in violation of 18 U.S.C. §§ 1505 and 2, defendant asserts that the Superseding Indictment fails to allege that defendant "influenced" the attorney to make the false statement.

Under § 1505, it is unlawful to "corruptly . . . influence[], obstruct[], or impede[] . . . the proper administration of the law under which any pending proceeding is being had before any department or agency." 18 U.S.C. §1505. To prove obstruction under 18 U.S.C. § 1505, the Government must establish "(1) that there was an agency proceeding; (2) that the defendant was aware of that proceeding; and (3) that the defendant intentionally endeavored corruptly to influence, obstruct, or impede the pending proceeding." *United States v. Durham*, 432 Fed. App'x 88, 91 (3d Cir. June 24, 2011) (citations omitted)).

The factual basis for Count Eleven is set forth in the Superseding Indictment in the Overt Acts Section of Count Six, which states: "On or about July 22, 2014, Smukler caused an attorney for [Marjorie] 2014 to send a letter to the FEC successfully urging the FEC to dismiss a complaint against [Marjorie] 2014 based on the false representation that the payments from Black and Blue and InfoVoter were "refund[s]" of "advanced funds . . . to pay for general election media and consulting expenses" that were "advanced on the condition that they would be refunded to the committee if the candidate did not secure the nomination." Superseding Indictment, Count VI ¶ 9(r). The Superseding Indictment states defendant attempted to influence a pending proceeding before the FEC by misrepresenting the nature of the "refunds" to the attorney representing the campaign. The Court concludes that such conduct, if proven, constitutes a violation of § 1505.[9]

---

[9]Defendant also argues—"for preservation purposes"—that "corruptly . . . influenc[ing]" under 17 U.S.C. §1505 is unconstitutionally vague. In *United States v. Poindexter*, 951 F.2d 369 (D.C.Cir. 1991), the D.C. Circuit concluded

iii.    Conclusion

For all of the foregoing reasons, Defendant's Motion to Dismiss Counts III, IV, V, VI, X, and XI for Failure to Allege That Mr. Smukler Willfully Caused Any False FEC Filings is denied.

D.  Defendant's Motion for a Bill of Particulars

In the alternative to dismissal of all or parts of the Superseding Indictment, defendant seeks a bill of particulars identifying any alleged, unnamed co-conspirators identified in Count One.  Count One of the Superseding Indictment charges a conspiracy to facilitate unlawful campaign contributions from Brady for Congress to Jimmie Moore for Congress to induce Moore to withdraw from the primary election and refers to conspirators "known and unknown to the Grand Jury."  Def.'s Mot. for Bill of Particulars at 2.   Defendant asserts that he cannot understand the nature of the alleged conspiracy to adequately prepare for trial without knowledge of the unnamed coconspirators.  The Court disagrees.

"A bill of particulars is a 'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor.'" *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).  The purpose of a bill of particulars is "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Knight*, 2013 WL 3367259, at *2–3 (E.D. Pa. July 3, 2013)(quoting *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir. 1971)).  Where an indictment fails to perform these functions, the trial court

---

that "corruptly" was unconstitutionally vague.  Congress subsequently enacted a statute defining "corruptly" as "acting with improper purpose, personally or by influencing another, including making a false or misleading statement, or withhold, concealing, altering, or destroying a document or other information." *United States v. Kanchanalak*, 37 F.Supp. 2d 1, 3 (D.D.C. 1999) (quoting 18 U.S.C. §1515(b)) (concluding that the statute is no longer unconstitutionally vague))).  Accordingly, the Court rejects this argument.

has discretion to direct the government to file a bill of particulars. *Id.,* at *2 – 3 (citing *Urban*, 404 F.3d at 771. A bill of particulars, however, is not a discovery tool and is not meant "to provide the defendant with the fruits of the government's case." *Knight*, 2013 WL 3367259, at *2 (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985)).

"It is well settled that courts are 'highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators . . . .'" *Knight*, 2013 WL 3367259, at *4 (collecting cases). Defendant cites a number of cases in which courts have granted bills of particular to name co-conspirators. *See, e.g.*, *United States v. Korbe*, No. 09-CR-0005, 2010 WL 2404384, at *5 (W.D. Pa. June 10, 2010) (ordering the government to identify unindicted co-conspirators in case where conspiracy lasted 18 years and indictment contained no overt acts); *United States v. Cree*, No. 12   2012 WL 6194395 (D.Minn. Dec. 12, 2012) (ordering government to identify co-conspirators in case where conspiracy lasted 12 years and involved approximately 200 members). Unlike those cases, Count One, the conspiracy count, involves allegations limited to two political campaigns—the Brady and Moore campaigns—over the course of one-year period.

Moreover, Count One of the Superseding Indictment is 15 pages long and details at length the charges against defendant, including the naming of co-conspirators Jones, Cavaness, and Moore. The Superseding Indictment states the alleged purpose of the conspiracy, the manner in which the conspiracy was carried out, and identifies the exact dates on which the alleged unlawful campaign contributions were made—detailing with specificity the bank transfers at issue—and the dates on which the allegedly falsified FEC filings were made. That is all the law requires.

The Government also states that it has provided "thousands of pages of discovery, including interview reports and notes, grand jury transcripts, and documents obtained through subpoenas and warrants." Resp. Opp. to Mot. for Bill of Particulars at 3; *see United States v. Ligambi*, No. 09-CR-496, 2012 WL 2362638, at *1 (E.D. Pa. June 21, 2012)("when the government supplements a detailed charging document with substantial discovery, defendant's claim for a bill of particulars is further weakened") (citing *Urban*, 404 F.3d at 772)). Defendant is not entitled to "wholesale discovery of the Government's evidence . . . nor to a list of the Government's prospective witnesses" through a bill of particulars. *Addonizio*, 451 F.2d at 63–64.

Defendant's Motion for a Bill of Particulars is denied for all of the foregoing reasons.

## V. CONCLUSION

For all of the foregoing reasons, defendant's Motions to Dismiss all or parts of the Superseding Indictment are denied. Defendant's Motion for a Bill of Particulars is also denied. An appropriate order follows.