**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.  17-00563-JD** |
| | : | |
| **KENNETH SMUKLER** | : | |

**GOVERNMENT'S MOTION FOR ADMISSION OF EVIDENCE OF OTHER ACTS
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America, by and through its undersigned attorneys, respectfully moves for the admission of evidence of relevant other acts at trial pursuant to Federal Rule of Evidence 404(b).  Specifically, the United States requests that the Court admit evidence that Kenneth Smukler violated campaign finance laws during Robert Brady's 2007 mayoral campaign. This evidence is overwhelmingly probative and admissible under Rule 404(b)'s policy and purpose of inclusion because it demonstrates Smukler's (1) knowledge and willfulness with respect to campaign finance law; (2) intent, plan, and preparation to violate these laws by using his consulting companies to make concealed contributions, and his absence of mistake in so doing; and (3) Smukler's knowledge of campaign finance reporting requirements and the importance of providing accurate information in that reporting, given that Smukler is charged here with causing false statements in Federal Election Commission ("FEC") reports in 2012 and 2014.

I.    **Background**

Brady was a candidate for Mayor of the City of Philadelphia in the 2007 Democratic primary election, Ex. 1, ¶ C, and Smukler worked for Brady's campaign committee ("Brady mayoral campaign").  Related to that race, the Brady campaign was investigated and ultimately fined for violating pertinent campaign finance laws.  In fact, during the campaign, when Smukler's conduct was discovered and reported in the press, the Brady campaign was forced to publicly fire

Smukler to address the controversy.  This evidence is highly probative of Smukler's knowledge and awareness of the transparency requirements imposed upon political campaigns, which are of exactly the same nature as charges before this Court.  The government proffers the following evidence of other acts that are relevant to prove knowledge, intent, and lack of mistake with respect to the charged offenses.

### A.    Ethics Board Investigation into Brady's Mayoral Campaign

In February 2007, the Board of Ethics of the City of Philadelphia ("Ethics Board") began an investigation into contributions received and expenditures made by the Brady mayoral campaign in 2006 and 2007.  *Id.*, ¶ J.[1]  This investigation ultimately uncovered eighteen violations of city campaign finance law by the campaign.  *Id.*, ¶ N.  Among these violations were allegations that Brady's *congressional* campaign committee paid two of Smukler's consulting companies, VoterLink and Black and Blue Media, at least $20,000 for work on the Brady *mayoral* campaign. *Id.*, ¶ P.[2]  These payments violated the contribution limits in the Philadelphia Election Code, and the Brady mayoral campaign also failed to report the payments on its city campaign finance reports.  *Id.*

In March 2009, well after Brady lost the primary race, the Brady mayoral campaign admitted to these campaign finance violations (and the sixteen others) as part of a settlement with the Ethics Board.  *Id.*, ¶¶ 3–4.

### B.    Smukler's Departure from Brady's Mayoral Campaign

---

[1]      The Ethics Board is "charged with providing ethics training for all city employees and enforcing city campaign finance, financial disclosure and conflict of interest laws."  It "has the authority to render advice, investigate complaints and issue fines."  Ex. 1, ¶ A.

[2]      Smukler used these same business entities to commit violations alleged in the Superseding Indictment.

In late April 2007, not long after the payments discussed above, Smukler was fired from the Brady mayoral campaign. Testimony at trial will establish that Smukler was forced to leave the mayoral campaign after it was revealed that as a member of that campaign, he coordinated the campaign's activities with a "527 group," a purportedly independent, tax-exempt organization with a political purpose. According to federal law, 527 groups are organized for "influencing or attempting to influence the selection, nomination, election or appointment of any individual to Federal, State, or local public office." Title 26 U.S.C. § 527 exempts such organizations from federal taxation. In 2007, the Brady campaign fired Smukler when it became public that he had violated the state's prohibition against coordination between independent expenditures by the so-called "527" and his candidate's political campaign. The government anticipates that the testimony of D.A. Jones, a participant in the crimes charged in the Superseding Indictment *and* a Brady operative who personally recommended firing Smukler in 2007, will further show that, although the Brady mayoral campaign publicly distanced itself from Smukler and his misconduct, Smukler, the candidate, and the candidate's other operatives all understood that Smukler would be able to work for Brady again in the future after the dust had settled.

## II.   <u>Argument</u>

The gravamen of the campaign finance charges in the Superseding Indictment is that the defendant, a paid political consultant and hired gun, ignored both the contribution limits and disclsourerequirements of the Election Act in his no-holds-barred approach to political campaigns. Smukler repeatedly and deliberately used companies within his personal control to deceive regulators, political opponents, and the voting public in pursuit of electoral victories on behalf of his clients. Evidence such as that described above is highly probative of the *mens rea* elements

that the government must prove with respect to various counts in the Superseding Indictment.

**Legal Standard**

Federal Rule of Evidence 402 establishes the background principle that relevant evidence is admissible unless it is barred by a specific provision of federal law.  Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Establishing a limited exception to the general principle that relevant evidence is admissible, Rule 404(b) provides that evidence of a defendant's crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, the Rule also is one of inclusion, recognizing that evidence of a crime, wrong, or other act may be admissible for any *other* purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.* 404(b)(2).  Accordingly, the Third Circuit has explained, Rule 404(b) "is inclusive, not exclusive, and emphasizes admissibility."  *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992); *see also, e.g.*, *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (noting that the Third Circuit "favor[s] the admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense").[3]  The Supreme Court has recognized that "Congress was not so nearly concerned with the potential prejudicial

---

[3]       Although the Third Circuit has stated on countless occasions that Rule 404(b) is a "rule of inclusion," *see, e.g.*, *United States v. Ciavarella*, 716 F.3d 705, 728 (3d Cir. 2013); *United States v. Benjamin*, 711 F.3d 371, 380 (3d Cir. 2013); *United States v. Kellogg*, 510 F.3d 188, 197 (3d Cir. 2007), it recently has spoken with a different tone, *see United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (describing Rule 404(b) as a "rule of general exclusion").  Yet the court more recently reconciled the matter, stating: "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted."  *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).  However, it further bears mention that *Caldwell* was a case in which the inadmissibility of the evidence rested on the fact that no valid non-propensity chain was established, and did not necessitate or warrant any change in the law.

4

effect of Rule 404(b) evidence as it was with ensuring that restriction would not be placed on the admission of such evidence." *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988); *see also United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (noting that "the drafters [of Rule 404(b)] . . . intended to emphasize admissibility of 'other crime' evidence" (internal quotation marks omitted))

> The Third Circuit has explained that admitting evidence pursuant to Rule 404(b)
>
> requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-act evidence must be accompanied by a limiting instruction.

*United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). That third prong of the analysis echoes Rule 403, which provides that relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Notably, Rule 403, like Rule 404(b), "is a rule of inclusion, generally favoring admissibility." *United States v. Kolodesh*, 787 F.3d 224, 237 (3d Cir. 2015) (internal quotation marks omitted).

Unlike other Circuits, the Third Circuit does not separately evaluate whether evidence would be admissible as "inextricably intertwined" with the charged conduct, though it does acknowledge that "evidence of wrongful acts that explain the circumstances of the crime" would be "admissible *within the framework* of [Rule 404(b)] because allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)." *United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010). Additionally, "intrinsic evidence" is admissible outside of the 404(b) analysis where it "directly proves the charged offense" or where it reflects "uncharged acts performed contemporaneously

with the charged crime [that] . . . facilitate[d] the commission of the charged crime." *Id.* at 248–49.

### A.   Analysis

With that framework in mind, evidence of Smukler's prior campaign finance violations is properly admissible at trial.  In a case such as this, predicated on deception, misuse of campaign funds, and repeated violations of the disclosure rules, evidence of knowing violations of rules governing such funds is highly probative of a defendant's awareness of the rules and his criminal intent.  In *United States v. Fumo*, 655 F.3d 288 (3d Cir. 2011) the jury convicted a state Senator of defrauding the Senate by spending public funds for personal benefit, in violation of the state's Ethics Act.  The Third Circuit held that "the content and enforcement of the Ethics Act was clearly relevant to the Government's claim that there were rules that [defendant] Fumo broke repeatedly, that those rules were clear enough for him to understand, and to show that he was deceiving the Senate when he misrepresented or omitted aspects of his actions and expenditures to avoid the perception that he had violated those rules."  *See also Genty v. Resolution Trust Corp.,* 937 F.2d 899, 908-09 (3d Cir. 1991) ("When . . . liability is premised on violations of the federal mail fraud statute, 18 U.S.C. § 1341, the defendants must have knowledge of the illicit objectives of the fraudulent scheme and willfully intend that those larger objectives be achieved."); *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994) ("Proving specific intent in mail fraud cases is difficult, and, as a result, a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent.").

As with the Senate funds in *Fumo*, Smukler's understanding of restrictions on political contributions and disclosure requirements goes directly to his intent to violate the Election Act. Evidence regarding the 2007 mayoral campaign shows intimate knowledge regarding campaign

finance and financial disclosure laws, where Smukler's compliance with those rules (or lack thereof) threatened and ultimately ended his very participation as a consultant to one of the very same candidates in the Superseding Indictment, albeit for a different office.

### 1. Evidence of Smukler's prior violations of contribution limits and reporting requirements is admissible to show knowledge, intent, common scheme and plan, motive, and preparation.

That the Brady mayoral campaign used Smukler's political consulting companies to hide expenditures and then failed to report those payments as contributions on the requisite campaign finance reports should be admitted at trial because this evidence is relevant to several critical issues other than the defendant's character, and it is not substantially outweighed by any danger of unfair prejudice.  The fact that Smukler previously engaged in tactics similar to that alleged in the Superseding Indictment—namely, using his companies as a conduit to disguise improper payments—and was publicly exposed and fired for it only a few years before charged conduct, is highly probative of his knowledge, intent, plan, preparation, and motive with respect to the conduct charged.  The probative nature of this evidence is particularly forceful given the government's burden at trial of proving beyond a reasonable doubt that Smukler committed a knowing and willful violation of the law, as well as the fact that Smukler's intent, motive, and knowledge are issues likely to be heavily contested at trial.

This is a textbook example of evidence that is admissible under Rule 404(b)(2) to prove the defendant's willfulness, knowledge and intent.  Under Rule 404(b), evidence of extrinsic wrongful acts is admissible if these requirements are met: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited

purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003), *citing Huddleston v. United States*, 485 U.S. 681 (1988).[4]

To convict Smukler of the violations of 52 U.S.C. §§ 30104, 30116, 30122 charged in the Superseding Indictment, the jury must find beyond a reasonable doubt that he acted "knowingly" and "willfully," that is, that "the act was done voluntarily and intentionally, not because of mistake or accident," and that "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *See* 52 U.S.C. § 30109(d)(1)(A)(i). That Smukler previously has been caught violating campaign finance laws by making illegal contributions (in the form of coordinated expenditures) is compelling evidence that he was well aware of the legal prohibitions at issue and nevertheless acted to circumvent campaign contribution limits to gain an advantage in the 2012 congressional primary election. *See, e.g.*, *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 193–94 (3d Cir. 2016) (affirming admission of other-acts evidence under Rule 404(b) because "the fact that [the defendant charged with theft of gold coins] had previously forfeited gold coins to the Government is relevant to his knowledge that holding gold coins may be unlawful under certain circumstances").[5]

This evidence is also relevant to demonstrate Smukler's understanding of the campaign reporting requirements and the legal requirement to provide accurate information in those reports, especially given that Smukler is charged with "knowingly" and "willfully" conspiring to make,

---

[4] The Court of Appeals requires that the district court's "reasoning [with respect to the admissibility of 404(b) evidence] should be detailed and on the record." *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013). Where such a record is presented, review is for abuse of discretion, and the trial court's "ruling will rarely be disturbed." *United States v. Gatto*, 995 F.2d 449, 457 (3d Cir. 1993) (citations omitted).

[5] That these violations concerned the Philadelphia Election Code and/or Pennsylvania law rather than the Federal Election Campaign Act is immaterial to this analysis because the general provisions of each are overwhelmingly similar, such that the evidence of Smukler's violations of the city code and state law regarding federal campaign funds certainly put him on notice of election regulations generally.

and with making, false statements in FEC reports.  *See, e.g.*, *United States v. Minor*, 498 F. App'x 278, 280 (4th Cir. 2012) (per curiam) (deeming evidence of the defendant's prior convictions admissible under Rule 404(b) to show knowledge of relevant laws)

Moreover, a reasonable jury could conclude that Smukler was simply following a *modus operandi*, in once again using VoterLink and Black and Blue in 2012 as vehicles for repeated violations and evasion of the campaign financing rules.  *See, e.g.*, *United States v. Dahlstrom*, 180 F.3d 677, 684–85 (5th Cir. 1999) (concluding that evidence of another, nearly identical scheme was properly admitted as proof of the defendant's knowledge of the relevant law and absence of good-faith mistake); *United States v. Frankhauser*, 80 F.3d 641, 649 (1st Cir. 1996) (upholding district court decision that other-acts evidence was admissible as "probative of defendant's knowledge of the law" and explaining that "the conduct charged in 1987 was very similar to that charged in 1994, with certain differences that could be explained to the jury").  The same can be said with respect to 2014, where Smukler utilized Black and Blue and another of his companies to deceive the Federal Election Commission.   Although it was the Brady mayoral campaign that admitted to these violations after Smukler's departure, his role in the misconduct is clear:  Smukler was a key figure during the 2007 campaign, and his companies were used deceptively to hide the illegal source and use of campaign funds.

The essential limitation on such evidence is that it cannot simply show propensity, that is, that the defendant committed a crime before and therefore must have done so again.  Therefore, the proponent of evidence of prior acts "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999); *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994).

Thus, Rule 404(b) was designed to set forth "a general rule of admissibility, subject to a single exception – evidence of other wrongful acts was admissible so long as it was not introduced solely to prove criminal propensity. Thus, the proponent no longer had to pigeonhole his evidence into one of the established common-law exceptions, on pain of exclusion. If he could identify any non-propensity purpose for introducing the evidence, it was admissible." *United States v. Green*, 617 F.3d 233, 244 (3d Cir. 2010) (emphasis in original). *See also United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) ("In sum, Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted.").

The Third Circuit has spoken favorably of Rule 404(b) evidence on many occasions. One panel stated:

> We favor the admission of such evidence, "if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Long*, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985 [] (1978); *see also United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir.1982), *cert. denied*, 462 U.S. 1134 [] (1983) . . . . "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980).

*United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999). *See also United States v. DeMuro*, 677 F.3d 550, 563 (3d Cir. 2012) (Rule 404(b) "is inclusive, not exclusive, and emphasizes admissibility.") (*quoting United States v. Sampson*, 980 F.2d 883, 886 (1992)); *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (confirming that admission of 404(b) evidence is favored); *cf. United States v. Caldwell,* 760 F.3d 267, 276 (3d Cir. 2014) (this "does not suggest that prior offense evidence is presumptively admissible."). The Supreme Court confirmed the Third Circuit's view, stating: "Congress was not so nearly concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restriction would not be placed on the admission of such evidence." *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988).

Here, with regard to the evidence from the 2007 mayoral campaign, the government does not rely on any propensity link, that is, any assertion that Smukler committed an offense before and therefore must have done so again. Rather, the evidence is offered to show willfulness, knowledge, and intent, and the chain of reasoning is free of any reference to propensity: Smukler had been exposed to and operated professionally with demonstrable knowledge of campaign finance rules – particularly the requirements of financial disclosure – when he was accused of and dismissed for misconduct during the 2007 race. Therefore, he was aware of campaign finance rules at the time of the charged offenses several years later.

Further, even assuming the evidence could hypothetically be used to suggest propensity, an argument the government need not and would not make, that is true of virtually any evidence properly offered under Rule 404(b) to prove a non-propensity point. Any concern for that, as addressed below, is simply a proper jury instruction directing the jury to ignore any propensity inference.

The Third Circuit's *en banc* decision in *Langbord v. United States Dep't of Treasury*, 832 F.3d 170 (3d Cir. 2016), *cert. denied*, 2017 WL 1366730 (U.S. Apr. 17, 2017), approved the admission of 404(b) evidence for virtually an identical purpose to that offered here. In that matter, the government asserted its ownership of ten extraordinarily valuable gold coins stolen from the U.S. Mint in Philadelphia in the 1930s. The coins were purportedly found in a family safe deposit box in 2003 by Joan Langbord, the daughter of Israel Switt, a dealer who acquired the coins almost 70 years earlier. In asserting a superior right to the coins, the government charged that Switt participated in the theft of the coins, and violated governmental decrees, including the Gold Reserve Act of 1934, that were enacted to counter the 1933 banking crisis by barring the distribution of gold. To prove that Switt obtained and then kept the coins knowing that the

possession was unlawful, the government introduced evidence that on a separate occasion Switt was compelled to forfeit ninety-eight different gold coins that he possessed in contravention of the law. The Court of Appeals affirmed the admission of this evidence under Rule 404(b), stating, "the fact that Switt had previously forfeited gold coins to the Government is relevant to his knowledge that holding gold coins may be unlawful under certain circumstances." *Id*. at 193-94.

Likewise here, evidence that Smukler previously ran afoul of campaign finance and financial disclosure laws at issue in this case is highly probative of his knowledge of the laws, and is therefore admissible under Rule 404(b). This permissible inference does not rely on propensity. Again, this is a well-settled application of 404(b) evidence to prove knowledge of wrongdoing, without any reliance on the proposition that because he did something before he must have done it again.[6]

---

[6] There are a large number of other Third Circuit decisions approving the use of 404(b) evidence of prior bad acts in order to establish knowledge with respect to the charged wrongdoing. *E.g., United States v. Repak*, 852 F.3d 230, 245 (3d Cir. 2017) (proof that the executive director of a municipal redevelopment authority (JRA) accepted uncharged gratuities from contractors seeking public work was admissible to prove his knowledge that the charged gratuities were not "unilateral token gifts" but rather "knowingly and intentionally accepted . . . with an understanding that those items were to influence the award of JRA contracts to those contractors"); *United States v. Willis*, 844 F.3d 155, 169-70 (3d Cir. 2016) (a legislative official was charged with receiving money from contractors to facilitate the award of renovation contracts to those contractors, and asserted in defense that he did not know the payments were bribes as opposed to loans; evidence that when he held a different government position he received money from one of the contractors in exchange for lifting a lien on that person's bank account was admissible to show "that he knew that these payments were not loans, that they were not gifts, and that he intended to accept cash in exchange for handing out more government contract work"); *United States v. Bailey*, 840 F.3d 99, 127-28 (3d Cir. 2016) (in prosecution for weapon possession, evidence of prior firearm conviction was admissible to prove the defendant's knowledge that drug dealing in the area where he participated in drug trafficking was a violent enterprise in which drug dealers were frequently armed); *United States v. Kolodesh*, 787 F.3d 224, 236 (3d Cir. 2015) (no plain error in admission of evidence of uncharged fraudulent conduct: where the defense asserted that the defendant operated a legitimate home health care business, "the relevance of the government's evidence is clear: Kolodesh knew what fraudulent practices looked like—indeed, he taught them to Pugman and Ganetsky—and if Kolodesh was as intimately involved in Home Care Hospice as Pugman testified, he certainly would have known of the fraudulent conduct"); *United States v. Kellogg*, 510 F.3d 188, 201 (3d Cir. 2007) (in a prosecution for fraudulently billing for environmental test services that were not performed, allowing the admission of 404(b) evidence of other false representations made to a state agency in order to prove the defendant's knowledge in making false statements); *United States v. Saada*, 212 F.3d 210, 223-24 (3d Cir. 2000) (evidence of prior fraud admissible to prove knowledge of charged fraudulent scheme); *United States v. Jemal*, 26 F.3d 1267, 1276 (3d Cir. 1994) (evidence that defendant participated in prior scheme to defraud creditors is "highly relevant" to show knowledge and intent and admissible under Rule 404(b) in prosecution for similar scheme); *United States v. Console*, 13 F.3d 641, 658-59 (3d Cir. 1993) (evidence that lawyers who conspired with a doctor to submit fraudulent medical bills to insurances companies also engaged in a similar scheme with other doctors "tended to

The evidence regarding the 2008-2009 matter is therefore admissible to prove Smukler's guilt, and not mere propensity, upon the present charges.

### 2.      The Evidence is Not Unduly Prejudicial.

None of the evidence offered here is unduly prejudicial.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  This rule

> "creates a presumption of admissibility." United States v. Claxton, 766 F.3d 280, 302 (3d Cir. 2014). "Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." United States v. Cross, 308 F.3d 308, 323 (3d Cir. 2002) (alteration in original) (quoting Fed. R. Evid. 403).

*United States v. Repak*, 852 F.3d 230, 246 (3d Cir. 2017). Moreover, "prejudice" does not mean simply that the evidence is harmful to the defendant's case.

> Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial. Evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note, F.R.Evid. 403.

*Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (emphasis in original). "[T]he prejudice against which [Rule 403] guards is unfair prejudice – prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found.'" *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (*quoting Goodman v.*

---

support the finding that [the lawyers] knew [the] bills [related to the charged claims] were fraudulent and that they intentionally submitted them to insurance companies as part of a broader plan to defraud insurance companies through fraudulent personal injury claims.").

*Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis in original)). "Virtually all evidence is prejudicial or it is not material." *Carter*, 617 F.2d at 972 n.14 (*quoting Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977)).

The relevant evidence proffered here is not unduly prejudicial. Proof that Smukler was previously investigated and fired for similar conduct with which he is accused, or was challenged regarding his compliance with campaign finance rules, does not invite an emotional reaction. Rather, to the extent any prejudicial impact exists (beyond the strength the evidence adds to the government's case), it may readily be ameliorated with a proper jury instruction.[7] The Third Circuit has often concluded that an appropriate jury instruction eliminates the chance of unfair prejudice, and that juries are presumed to follow such instructions. *See, e.g., United States v. Lee*, 612 F.3d 170, 191 (3d Cir. 2010); *United States v. Givan*, 320 F.3d 452, 462 (3d Cir. 2003). Here, the government will propose use of Third Circuit Model Jury Instructions Criminal § 4.29, regarding 404(b) evidence, which was approved by the Third Circuit in. *Lee*, 612 F.3d at 191-92 & 191 n.25.[8]

Because Smukler's prior violations of contribution limits and reporting requirements are proffered for a non-propensity purpose, are relevant, and have a probative value that is not

---

[7]  The Third Circuit has allowed the admission under Rule 404(b) even of information that appeared far more prejudicial than anything involved in the current case. For example, in *United States v. Green*, 617 F.3d 233 (3d Cir. 2010), the defendant was charged with attempted possession of a kilogram of cocaine with intent to distribute. The Court held that a district court did not abuse its discretion in admitting evidence regarding the defendant's efforts to acquire dynamite in order to kill an undercover officer involved in an earlier case, because the evidence helped explain the conversations between the defendant and a cooperator, and to explain the cooperator's motives in assisting law enforcement. The Court added: "We note that we have rejected Rule 403 challenges to the admission of evidence that was just as prejudicial as the evidence at issue here. *See, e.g.,* [*United States v. Scarfo*, 850 F.2d 1015, 1020 (3d Cir. 1988)] (evidence of uncharged murders); *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.1996) (evidence of uncharged rape)." *Green*, 617 F.3d at 252. *See also Bronshtein v. Horn*, 404 F.3d 700, 730-31 (3d Cir. 2005) (under a state rule akin to Fed. R. Evid. 404(b), the trial court permissibly allowed evidence of participation in another murder to prove the identity of the killer in the charged murder).

[8]  In *United States v. Davis*, 726 F.3d 434, 445 (3d Cir. 2013), the Court suggested that the limiting instruction should be given at the time the evidence is admitted, not just in the final jury charge.

substantially outweighed by its potential for causing unfair prejudice, this evidence should be admitted pursuant to Rule 404(b).

### III.    <u>Conclusion</u>

For the foregoing reasons, the Court should admit the above-described evidence at trial.

Respectfully submitted,

WILLIAM M. McSWAIN                      ANNALOU TIROL
United States Attorney for the            Acting Chief
Eastern District of Pennsylvania          Public Integrity Section

s/_____            s/_____
Eric L. Gibson                            Richard Pilger
Assistant United States Attorney          Director, Election Crimes Branch
                                         Rebecca Moses
                                         Trial Attorney
                                         Public Integrity Section
                                         Criminal Division
                                         U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been served by

Electronic Court Filing upon Brian McMonagle, Esq., counsel for defendant Kenneth Smukler.


/s/ Eric L. Gibson
ERIC L. GIBSON
Assistant United States Attorney