# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | CRIMINAL ACTION |
|---|---|
| v. | |
| KENNETH SMUKLER | NO. 17-563-02 |

DuBois, J.                                                                                                          October 26, 2018

**M E M O R A N D U M**

## I. INTRODUCTION

On October 24, 2017, a federal grand jury in the Eastern District of Pennsylvania named defendant Kenneth Smukler and co-defendant Donald "D.A." Jones in a six count Indictment charging violations of the Federal Election Campaign Act ("FECA"). On March 20, 2018, the government filed a Superseding Indictment charging additional violations of FECA. The Superseding Indictment charges Smukler with participation in a conspiracy in violation of 18 U.S.C. § 371 (Count I); causing unlawful campaign contributions in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i), 30116(f), and 18 U.S.C. § 2 (Counts II & VII); causing false campaign reports in violation of 52 U.S.C. §§ 30104(a)(1), 30104(b)(5)(A), 30109(d)(1)(A)(i), and of 18 U.S.C. § 2 (Counts III, IV & X); causing false statements in violation of 18 U.S.C. §§ 2 and 1001(a)(1) (Count V & VI); making contributions in the name of another in violation of 52 U.S.C. §§ 30109(d)(1), 30116(f), 30122, and 18 U.S.C. § 2 (Counts VIII & IX); and obstruction of a pending agency proceeding in violation of 18 U.S.C. §§ 2 and 1505 (Count XI).

Pending before the Court is Government's Motion for Admission of Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b). For the reasons that follow, the motion is denied.

## II. BACKGROUND

a. Factual Summary

The Superseding Indictment charges defendant with campaign finance violations in connection with two congressional campaigns: (1) the 2012 congressional primary campaign of United States Representative Robert Brady ("Brady") and (2) the 2014 congressional primary campaign of Marjorie Margolies ("Margolies"). With respect to the Brady campaign, the government charges that defendant and his co-conspirators facilitated unlawful payments totaling $90,000 to induce Jimmie Moore—Brady's primary challenger—to drop out of the primary race. In connection with the Margolies campaign, defendant is charged with facilitating unlawful campaign contributions through two political consulting entities which he owned and disguising those unlawful contributions as refunds of general election contributions.[1]

The government's Rule 404(b) motion seeks leave of Court to introduce evidence of campaign finance violations in a campaign in 2007 on which the defendant worked.

b. The Government's Motion Pursuant to 404(b)

The government seeks to introduce evidence related to defendant's work on Brady's 2007 campaign for Mayor of the City of Philadelphia. Gov. Mot. to Admit 1. The evidence described in the government's motion consists of two events.

First, the government seeks to introduce evidence of a Board of Ethics of the City of Philadelphia ("Ethics Board") investigation into contributions received and expenditures made by the Brady mayoral campaign in 2006 and 2007. *Id.* at 2. That investigation ultimately culminated in a settlement agreement in which the Brady campaign admitted eighteen violations of Philadelphia campaign finance law. *Id.* at 2. One of the violations identified in the settlement

---
[1] The Court summarized the charges and the facts at length in its Memorandum dated July 13, 2018. It will do so in this Memorandum only as necessary to explain its rulings.

agreement involved a claim that Brady's mayoral campaign violated § 20-1003 of the Philadelphia Code by using funds from Brady's congressional campaign to pay defendant's consulting companies, Black and Blue Media and VoterLink, for consulting services provided to Brady's mayoral campaign. *Id.* at Ex. 1. That settlement agreement was entered into after defendant left the Brady campaign and neither defendant nor defendant's companies were party to the agreement. *Id.* at 9.

Second, the government seeks to introduce evidence regarding defendant's termination from the Brady mayoral campaign. The government asserts that defendant was fired from the campaign after it was revealed that he unlawfully "coordinated the [Brady mayoral campaign's] activities with a '527 group,' a purportedly independent, tax-exempt organization with a political purpose." *Id.* at 3.

The government requests that the Court admit this evidence pursuant to Federal Rule of Evidence 404(b). Plaintiff filed a response to the government's motion on October 22, 2018 (Document No. 124). The motion is thus ripe for review.

### III. APPLICABLE LAW

The Court has discretion to rule on evidentiary issues in limine to ensure that the jury is not exposed to confusing, irrelevant, or unfairly prejudicial evidence. *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Ruling in limine can serve the interests of efficiency; however, where the "context of trial would provide clarity, the Court may defer the issues until trial." *Fritner*, 892 F. Supp. 2d at 707.

## IV. DISCUSSION

Evidence admitted under Rule 404(b) must satisfy four steps: "(1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). The party seeking to admit the evidence bears the burden of showing that the evidence satisfies the admissibility requirements of Rule 404(b). *Id.*

In this case, the government's motion fails to satisfy a 404(b) analysis. Although the government has identified an appropriate non-propensity purpose for the evidence, the evidence is not sufficiently relevant to the proffered purpose, and its probative value is substantially outweighed by a risk of unfair prejudice.

a. <u>Government's Articulated Non-Propensity Purpose is Proper</u>

First, the Court must determine whether the evidence is being offered for a sufficient non-propensity purpose. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Put simply, Rule 404(b) prohibits evidence of prior bad acts for the purpose of showing the defendant's propensity to commit crime. In spite of this prohibition, prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As a result, parties may introduce evidence of prior bad acts for appropriate non-propensity purposes that are "at issue" in the case. *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).

4

The government contends that evidence of the campaign finance violations during the 2007 Brady mayoral campaign is admissible under Rule 404(b) for the purpose of demonstrating the defendant's: "(1) knowledge and willfulness with respect to campaign finance law, (2) intent, plan, and preparation to violate these laws by using his consulting companies to make concealed contributions, and his absence of mistake in so doing; and (3) Smukler's knowledge of campaign finance reporting requirements." Gov. Mot. to Admit 1.

In this case, the defendant's knowledge and intent are "at issue" since the prosecution bears the burden of showing that the defendant "committed a knowing and willful violation" of the law. *Id.* at 8. In other words, the prosecution must show that "the act was done voluntarily and intentionally, not because of mistake or accident, and that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids." *Id.* The government further asserts that the defendant's intent, motive, and knowledge are likely to be heavily contested at trial. *Id.* Based on these circumstances, the government has offered a sufficient non-propensity purpose that is "at issue" in the case.

    b. <u>Government's Proposed Evidence Lacks Relevance</u>

Next, the Court must evaluate how the government's evidence is relevant to the identified non-propensity purpose. "Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Caldwell*, 760 F.3d at 277 (internal citations omitted). For evidence offered pursuant to 404(b) to be relevant it must fit into an inferential chain "no link of which is a forbidden propensity inference." *Repak,* 852 F.3d at 243 (internal citations omitted). "[T]his chain [must] be articulated with careful precision

5

because, even when a non-propensity purpose is 'at issue' in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." *Id.*

The government argues that the evidence at issue is relevant because the fact that "Smukler previously had been caught violating campaign finance laws . . . is compelling evidence that he was well aware of the legal prohibitions at issue." Gov. Mot. to Admit 12. In support of its argument, the government cites *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170 (3d Cit. 2016), *cert. denied*, 2017 WL 1366730 (U.S. Apr. 17, 2017). In *Langbord* the court held that a man's prior forfeiture of gold coins to the government was relevant "to his knowledge that holding gold coins may be unlawful under certain circumstances." *Id.* at 193–94. The government's attempt to draw a parallel between forfeiting gold coins and violating campaign finance law is rejected. In this case, unlike *Langbord*, the proffered evidence is not clearly relevant to the defendant's knowledge and intent because (1) the defendant is only tenuously connected to the campaign finance violations acknowledged in the Brady mayoral campaign's settlement agreement with the Ethics Board; (2) although the Brady mayoral campaign improperly paid defendant's consulting companies with Brady congressional campaign funds, the government has provided no evidence that the defendant's companies were at fault for this misuse of funds; and (3) the defendant's coordination with a "527 group," for which he was fired from the Brady mayoral campaign, is a factually different offense from the charges that defendant currently faces.

First, the government's motion presents little or no evidence that the defendant had knowledge of the campaign finance violations contained in the Ethics Board Settlement. As it acknowledges in its motion, defendant left the 2007 Brady mayoral campaign before the campaign entered into a settlement agreement with the Ethics Board. Gov. Mot to Admit 9.

6

Defendant did not sign the agreement and the prosecution did not present any evidence that the defendant was involved in the settlement negotiations. *Id.* at Ex. 1. As a result, in reference to this settlement agreement, the government's argument boils down to a tenuous inferential chain. The fact that defendant's previous employer entered into a settlement agreement, to which the defendant was not a party, after the defendant's termination, does not logically lead to the inference that the defendant would have had knowledge of the campaign finance violations covered by the agreement.

Second, although the government makes much of the allegations that the defendant's consulting companies, Black and Blue Media and VoterLink, were paid improperly by Brady's congressional campaign, it fails to show that the defendant was responsible for the actions of the Brady campaign. *Id.* at 9. The government provides no evidence that the defendant caused the payments to be made in this unlawful manner, and fails to demonstrate that defendant had knowledge that these payments were campaign finance violations at all. The proffered evidence does not serve the government's stated non-propensity purposes of demonstrating a common scheme or plan, or showing that these companies were a *modus operandi* used as "vehicles for repeated violations and evasion of the campaign financing rules." *Id.* at 9. Instead, the government's evidence does little more than show the defendant's proximity to past violations, which is exactly the type of propensity evidence that rule 404(b) seeks to exclude. *See United States v. Morley*, 199 F.3d 129, 133–34 (3d Cir. 1999) (finding that a defendant's prior bad act of causing others to illegally notarize bonds was irrelevant to the defendant's knowledge and intent in allegedly signing a forged will. "[T]he only connection . . . is the inference that [the defendant] was likely to have been guilty of the latter merely because he had previously engaged in "similar" impropriety. This is the very evil that Rule 404(b) seeks to prevent.").

7

Third, the government's proposed evidence references the defendant's violation of an entirely distinct type of campaign finance rule – coordinating campaign activities with a "527 group." *Id.* at 3. As discussed above, defendant was allegedly terminated from the 2007 Brady mayoral campaign after it came to light that he had violated the state's prohibition against coordination between a "527 group" and a candidate's political campaign. *Id.* In the present case, defendant is charged with causing excessive contributions, causing the filing of false reports with the Federal Election Commission, conduit contributions, concealing material facts, and the obstruction of a pending proceeding. None of these charges involve the same or similar conduct that allegedly led to the defendant's termination from the Brady mayoral campaign in 2007. The government relies on the inference that an individual who has previously been accused of violating any provision of any campaign finance law would subsequently be more knowledgeable about all provisions of all campaign finance laws.[2] Defendant's understanding of state law prohibitions regarding coordination with "527 groups" is irrelevant to his knowledge and intent in the present case. *See United States v. Davis*, 726 F.3d 434, 443 (3d Cir. 2013) (holding that defendant's prior conviction for cocaine possession was not admissible to show knowledge in a trial for cocaine distribution because "[p]ossession and distribution are different in ways that matter").

---

[2] The alleged violations of campaign finance law that occurred during the 2007 Brady mayoral campaign were violations of the Philadelphia Election Code and Pennsylvania law as opposed to the FECA violations charged in the present case. Gov. Mot. to Admit 8. To circumvent this issue the government argues that because the laws are so similar the defendant's "violations of the city code and state law regarding federal campaign funds certainly put him on notice of election regulations generally." *Id.* The Court rejects this argument. The differences between the prior bad acts presented in the government's 404(b) motion and the charges in this case, coupled with the lack of evidence that the defendant was directly involved in the prior bad acts, require denial of the motion. *Cf. Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 193 (3d Cir. 2016), *cert. denied sub nom. Langbord v. Dep't of Treasury*, 137 S. Ct. 1578 (2017).

Based on the attenuated inferential chains presented by the government, the Court concludes the proposed evidence is irrelevant to the government's stated non-propensity purposes of showing knowledge, willfulness, intent, plan, and absence of mistake.

    c. <u>Probative Value of Government's Proposed Evidence is Substantially Outweighed by Risk of Unfair Prejudice</u>

Even if the evidence could be interpreted to add probative value, such value is substantially outweighed by the risk of unfair prejudice.

The third step in the 404(b) admissibility analysis requires that "other-acts evidence must not give rise to a danger of unfair prejudice that substantially outweighs the probative value of the evidence under Rule 403 of the Federal Rules of Evidence." *United States v. Repak*, 852 F.3d 230, 246 (3d Cir. 2017). "Unfair prejudice" is more than simply "damage to the opponent's cause" but rather is "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, [and] which inhibit[s] neutral application of principles of law to the facts as found." *Goodman v. Penn. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (internal citations omitted). District courts are required to conduct a substantive analysis and provide "meaningful balancing" when applying F.R.E. 403. *Repak*, 852 F.3d at 246. Merely reciting the standard without application to the facts at issue is insufficient. *Id.*

As discussed above, the Court has concluded that evidence of the Brady mayoral campaign's settlement agreement with the Ethics Board, to which the defendant was not a party, and evidence of defendant's termination from the Brady mayoral campaign for coordination with a "527 group" in violation of state and local laws is irrelevant to his knowledge and intent to violate FECA's campaign contribution laws and reporting requirements in 2012 and 2014. Moreover, any minimal probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

"As the Advisory Committee's Note to Rule 404(a) explains, the prejudice associated with character evidence is quite real: Character evidence . . . tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *Caldwell*, 760 F.3d at 284 (citing Fed. R. Evid. 404(a) Advisory Committee's Note).

In this case, the defendant is charged in the Superseding Indictment with eleven counts spanning two congressional campaigns. Injecting into the case evidence of a third instance of alleged campaign finance violations, of which the defendant is only loosely affiliated, and was never charged or convicted, would unfairly raise the spectre of propensity in the minds of the jury.

## V. CONCLUSION

For all of the foregoing reasons, the Government's Motion for Admission of Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b) is denied.

An appropriate Order follows.