## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| **vs.** | : | |
| **KENNETH SMUKLER** | : | **NO. 17-563** |

## DEFENDANT KENNETH SMUKLER'S
## SENTENCING MEMORANDUM

KENNETH SMUKLER, through **his** Counsel, respectfully submits this Sentencing Memorandum to provide the Court with important information concerning **his** background, employment, character, and family. Defendant respectfully submits that **his** total offense level is 16 and **his** criminal history category is I, yielding a guideline range of 21-27months. For the reasons discussed in detail below, **Mr. Smukler** implores the Court to rely on the pronouncements of United States v. Booker (125 S.Ct. 738 (2005) and to exercise its discretion in imposing a non-custodial sentence. Such a sentence would be "sufficient but not greater than necessary" to comply with the purposes of punishment under the federal sentencing scheme.

## A.  CALCULATION OF DEFENDANT'S SENTENCING RANGE UNDER THE FEDERAL SENTENCING GUIDELINES

The Presentence Report calculates Mr. Smukler's total offense level at 24, yielding a guideline range of 51-63 months. Mr. Smukler urges the Court to accept the objections he has raised to the Report, and to recalculate his offense level at 16, and a guideline range of 21-27 months. For the many reasons discussed below the defendant urges the Court to depart dramatically from the sentencing guidelines and impose a non-custodial sentence.

**B.    SENTENCING UNDER UNITED STATES v. BOOKER**

As the Supreme Court has consistently asserted, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gail v. United States, 128 S.Ct. 586, 598 (2007) quoting Koon v. United States, 518 U.S. 81, 113 (1996). This enduring principle was given new life in United States v. Booker, where the United States Supreme Court held that those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory (18 U.S.C. § 3553(b)(1), or which rely upon the Guideline's mandatory nature (18 U.S.C. § 3742(e), to be incompatible with the Sixth Amendment. 543 U.S. 220, 244 (2005). Accordingly, the Court severed and excised those provisions, thereby rendering the Guidelines "effectively advisory." ID. at 245.

The 3ᵈ Circuit has developed a three-step approach to sentencing that district courts must follow in the wake of Booker:

(1)    Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

(2)    In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects

the Guidelines calculation, and take into account our Circuit's Pre-Booker case law, which continues to have advisory force.

(3)     Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculation under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3ᵈ Cir. 2006) (quotation marks, brackets, and citations omitted), citing United States v. King, 454 F.3d 187, 194, 96 (3ᵈ Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3ᵈ Cir. 2006). Thus, steps one and two mirror the pre-Booker scheme, in which any sentence outside the applicable sentencing range must be imposed pursuant to the departure framework provided by the Guidelines.

It is 18 U.S.C. § 3553(a), however, that ultimately governs the imposition of the defendant's sentence, with the Guidelines calculation operating as merely one factor amongst the variety of considerations listed in this statute. See Booker, 543 U.S. at 246. As the Supreme Court has emphatically stated, a sentencing judge "may not presume that the Guidelines range is reasonable." Gall, 128 S.Ct. at 596-97. Rather, it is the mandate in Section 3553(a) that "[t]he court shall impose a sentence sufficient, *but not greater then necessary*, to comply with purposes set forth in paragraph (2) of this subsection." That guides trial courts' sentencing determinations. 18 U.S.C. § 3553(a) (emphasis added). These purposes, as listed in 18 U.S.C. § 3553(a)(2), include "the need for the sentences imposed—

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner.

Also, sentencing courts are directed to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1));

(2) the kinds of sentences available; (18 U.S.C. §3553(a)(3));

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. § 3553(a)(6)); and

(4) the need to provide restitution to any victims of the offense (18 U.S.C. §3553(a)(7a));

As the 3ʳᵈ Circuit has been adamant in emphasizing, "[t]he record must demonstrate the trial court gave meaningful considerations to the §3553(a) factors. Cooper, 437 F.3d at 329.

As stated by Judge Adelman:

> Sentencing will be harder now because District Courts cannot
> just add up figures and pick a number with a narrow range.
> Rather, they must consider all of the applicable factors,
> listen carefully to defense and government counsel, and
> sentence their person before them as an individual. Booker
> is not an invitation to do business as usual?

United States v. Ranum, 353 F. Supp 2d 984, 986 (E.D. Wis 2005). In sentencing the individual, the courts should not follow the "old departure methodology." Today, the Courts are free to disagree, in individual cases, with the recommended guideline range and instead impose a sentence that is reasonably supported by the § 3553(a) factors and which is sufficient but not greater than necessary.

## C. BACKGROUND, CHARACTER, FAMILY

### 1. Background

Mr. Smukler learned at a very young age what it means to give back to one's community. The son of Joe and Connie Smukler, leaders in the international human rights movement to allow Jews to emigrate from the Soviet Union (known as the "Soviet Jewry Movement"), Mr. Smukler was raised by parents who gave selflessly and tirelessly for the freedom of Jews halfway around

the world. After graduating from the University of Pennsylvania, Ken went on to earn his law degree at Dickinson. After law school, Mr. Smukler endeavored to follow in his parents' footsteps by working with his cousin Alexander, a recent Russian emigre to the United States, to form Operation Mannah - a non-profit effort that provided food parcels to elderly Jewish pensioners in the Soviet Union facing malnutrition. This was achieved through the development of a food delivery system centered around the use of an Irish-based store and international monetary transactions between the U.S. and the Irish-based corporation.

*A National Force for Voter Empowerment*

Most people know Ken Smukler as a local political operative working behind the scenes for and with some of the most powerful politicians in our area. Beginning his career in politics as the Communications Director for W. Wilson Goode's mayoral re-election campaign (1997) and Frank Rizzo's mayoral primary (1991) to Marjorie Margolies-Mezvinsky's Congressional campaigns (1992, 1994) and the Supreme Court campaigns of Deborah Todd (2007) and David Wecht (2015), Mr. Smukler has consulted on literally hundreds of campaigns at the local, state, and federal level.

What most people do not know about Mr. Smukler is the work that he has done at the national level to empower historically disenfranchised voters through the development of groundbreaking technologies integrated with national media platforms; work that has helped literally millions of American citizens exercise their Constitutional right to vote. In 2001, following the Bush-Gore presidential election, Mr. Smukler began to develop technologies that would assist voters in registering to vote, finding their poll location, and registering problems at poll locations in real time on Election Day.

5

In 2002, Mr. Smukler developed the first fully automated national voter hotline using Interactive Voice Response technology. This hotline was beta-tested by the Democratic National Committee in the 2002 then launched in the 2004 presidential election in a joint venture between Mr. Smukler and NBC News. At Mr. Smukler's direction, the National Constitution Center set up the hotline staging center, NBC brought in its cameras, and the MYVOTE1 hotline processed nearly 1 Million calls throughout the day.

This hotline was promoted by MSNBC during the 2006 mid-terms, by CNN in 2008, and in 2012 by Radio 1 - the largest African American radio platform in the country reaching over 8 million listeners. The hotline was staffed primarily by graduate students from the Fels School of Government. In 2012, Mr. Smukler testified before the U.S. House Committee overseeing federal elections. Over the course of the national hotline's lifetime, Mr. Smukler's technological innovations assisted literally millions of American citizens exercise their right to vote. Mr. Smukler produced these hotlines in conjunction with some of the largest civil rights groups in the country including the NAACP Legal Defense Fund, Common Cause, the Knight Foundation, and the Lawyers Committee for Civil Rights. The data generated from these hotlines helped these organizations and others shape public policy designed to break down the barriers to voting particularly in historically disenfranchised minority communities. Gregory Moore, Executive Director of the NAACP-National Voter Fund for over 17 years, said this about Mr. Smukler in his letter to the court, ***"Ken's expertise was crucial in creating user friendly vehicles for voters to receive relief from efforts to suppress their right to vote.*** *Not only was Ken supportive of these efforts, he also played the leading role in developing the promotional programs and raising the financial resources to ensure their successful implementation. He was also able to recruit and*

*assemble a team that provided the technical support for the programs to ensure that the infor-*

*mation and data that was being collected from across the country was accurate and being con-*

*veyed to organizations and advocates who could provide legal and other support services."*


During these years, Mr. Smukler also developed technology that allowed campaigns to provide poll location information concatenated to auto-dial telephone calls. It is no hyperbole to say that no single individual in the country did more to technologically empower disenfranchised voters in these years than Mr. Smukler. At the same time, Mr. Smukler began to develop technology that would engage millennial voters in Election Day in ways that had not been imagined.

In 2003, working with Michael Smerconish - then a local radio talk show host in Philadelphia - Mr. Smukler produced groundbreaking Election Day coverage of the Katz Street 2003 mayoral race. Thirteen years later, in the 2016 presidential election, his Election Day coverage for Vice News, called Votecastr, reached millions of millennial viewers online.


*Helping Empower Women Around the World*

In 1994, after the loss of Marjorie Margolies' campaign for Congress, Smukler founded Women's Campaign International - a non-profit organization dedicated to politically empowering women in emerging democracies around the world. Placing Ms. Margolies at its helm, Mr. Smukler founded and built an organization that has raised millions of dollars to conduct leadership trainings for women in some of the most dangerous places in the world. Implementing a proven curriculum focused on sustainable capacity-building and community engagement, WCI's programs have equipped more than 500,000 individuals with tangible skills in small business de-

velopment/financial literacy, community engagement, political participation, campaign management, and conflict mitigation. Operating at local, national, and global levels since 1998, WCI has worked to establish and cultivate a leadership development pipeline for girls and women to effect worldwide.

WCI was the brainchild of Mr. Smukler who put together the business and development plans for the organization from its inception. Mr. Smukler never asked for nor received any compensation for this work.

*Working Behind the Scenes to Make Our City Better*

In 2008, Mr. Smukler began working with Congressman Bob Brady. His efforts were not those of a traditional political operative but as a public policy consultant working on projects he felt could make a difference. He received no money for these efforts nor did he garner any of the public credit for the work he did.

In 2008, the city was threatening to cancel the **Mummers Parade** for failure of the Mummer's to pay city costs billed for the previous years parade. On Christmas Eve, Mr. Smukler and Congressman Brady began making calls for corporate sponsors and to rally political support to save the Mummers parade. The parade was saved and out of this experience was borne an idea Mr. Smukler came up with: **The Greater Philadelphia Traditions Fund** - a dedicated revenue stream of corporate and non-profit money that would support, on an ongoing annual basis, all of the ethnic parades and festivals across the city. These funds were critical in saving the **Odunde Festival** - the nation's oldest African-centric festival.

Also in 2008, it was Mr. Smukler's idea to bring a nationally **televised debate between Barack Obama and Hillary Clinton** to the **National Constitution Center in Philadelphia.**

In 2009, news broke that the the city's premier collegiate regatta - the **Dad Vail** - would be leaving Philadelphia for the city of Rumson, New Jersey. Smukler worked behind the scenes to expose the inadequacy of Rumson's infrastructure to host a world class regatta. His efforts led the City of Rumson to rethink its commitment to the race. At the same time, Smukler and Brady worked to raise corporate sponsorship for the race. In the end, the Dad Vail regatta stayed in Philadelphia.

In 2011, responding to reports that the city was going to cancel the 31st annual **Christmas Motorcycle Toy Run** providing Christmas **toys** hospitalized at **CHOP**, Mr. Smukler worked with city officials and CHOP administrators to change the route and create staging areas for toy drop offs at Drexel, the Linc and, in future years, the Sugar House casino parking lot.

In 2012, following the release of a national study showing that Congressman Brady's congressional district was the 2nd hungriest in the nation, Smukler approached **Philabundance** with the idea of building a hybrid food pantry/supermarket in the middle of a food desert in the 1st Congressional District - the City of Chester. Brady and Smukler raised over **$4 million** in public and private funds and built **Fare and Square** - the first supermarket to operate in the City of Chester in a decade.

In 2013, after years of financial mis-management, the city was prepared to pull the plug on the nationally recognized **Philadelphia Cycling Championship**- an event that attracted cyclists from around the country and was a revenue generator for the Manyunk Business Association. Mr. Smukler worked with race advocates, politicians, and race planners to change the course to fit city budget requirements and raise the funds necessary to save the race.

In 2014, it was Mr. Smukler who behind-the-scenes spearheaded the effort to bring the **Democratic National Convention to Philadelphia**: Smukler who coordinated the convening the first working group - meetings of political and corporate stakeholders to convince the Nutter administration to bid for the convention; Smukler who wrote the councilmanic resolution demanding the mayor submit a bid; Smukler's idea for Congressman Brady to recruit former mayor Ed Rendell to chair the effort; and Smukler who brought the consulting team to Philadelphia that would ultimately write the winning DNC bid. In 2015, Philadelphia was chosen to host the **Democratic National Convention**. In 2016, the city hosted the DNC Convention.

In 2017, Mr. Smukler was approached by head of the Philadelphia Sports Congress to save the negotiations between the city and the National Football League to bring the **NFL Draft** to Philadelphia; negotiations that had broken down over city labor costs. Ultimately Congressman Brady engaged the Building Trades unions to come to the table and the NFL Draft came to the Benjamin Franklin Parkway that summer.

In 2017, when news broke that the negotiations between Conrail and city officials had broken down between Conrail and the city over clean up of what became known as the "**Heroin Hellscape**" by the railroad tracks in Kensington, it was Mr. Smukler who engaged Congressman Brady in the effort ultimately leading to face-to-face negotiations hosted by the congressman and the cleaning of the site.

In his letter to the Court, **Congressman Brady** humbly credits Mr. Smukler for these projects for which the Congressman has received well earned praise. He also describes Mr. Smukler's humility in making sure that others received the credit for his efforts, *"Kenny never asked for public notice for his efforts, he never sought the spotlight for his role in any of these efforts... he*

*did it out of our friendship for one another and as his way of giving back to the city that both*

*of us love."*

As you can see, for the past decade Mr. Smukler has devoted his energies and talents to making our city and region a more vibrant and caring place to live, work, and raise our families. All of this work he has done pro bono - neither being paid out of Congressman Brady's office nor his campaign budget. He engaged in these efforts as his way of giving back to his community seeking neither credit nor compensation for doing so.

## 2. **Character and Family**

There is nothing more important to Ken Smukler than his family. He first met his wife, **Shelly**, in law school, and together they have raised three wonderful children, **Lucille** (26), **Phoebe** (23), and **Camille** (20). Ken considers his children as his most important contribution to society, yet unselfishly credits their success to their own hard work. In her interview with U.S. Probation Officer Lott, **Shelly** refers to her husband as her "**best friend**, and describes him as a **loyal** and **honest** person for whom family is a priority- **he always puts them first**- games, plays everything."

Ken's family and friends have submitted numerous letters of support to the Court describing Ken's love and devotion to his family. Marguerite Nealon, a friend of more than 20 years wrote, *"Ken is a dedicated and loving father…. who was always there for* **his girls and is their biggest fan, never missing a game, a match, a recital or** *a presentation….it was a labor a labor of love for Ken….he always put his family first."* David Silvera, another friend of 20 years, writes *"Ken exemplifies the definition of the yiddish term* **mensch** *a good person, a person of honor, integrity*

and rectitude…. Ken has been a leader in building a community of fathers and daughters through the **Indian Princess organization** *to share camping weekends and community-based activities through the YMCA at locations throughout the region…. he is the group's heart and soul."*

Many of Ken's friends have remembered how he would always be here for them in their darkest hours. Dan Langer, a friend of 31 years, **suffered a massive heart attack** in Janesville, Wisconsin in 2015, and Ken was there for him. *"I was in an **induced coma** for three days and as I was waking up one of the first voices I heard in the ICU was that of Ken's….. It turns out he was actually on his way to the airport for a business trip when he got the call but that didn't matter he jumped on a plane so he could get to me and my family in our hour of need."* When Kevin Christine's wife was battling **cancer,** *"Ken was a steadfast friend and an infinite source of resolve"* for their family.

In her letter to the Court, Dr. Melissa Brown describes how Ken came to her aid when her **husband became gravely ill.** *"His (Ken's) multiple trips to the University of Pennsylvania as well as the University of Maryland were godsends…in fact **the day following the conclusion of his trial he sat with me at the University of Maryland medical center**."*

Yet another friend, Kevin Small, in his letter to the Court, describes Ken's efforts to help he and his wife adopt their children. *"**I owe my children to his tireless efforts.** He connected us with a cousin who worked in the Ministry of Education in Russia, and because of his many efforts, we feel **Kenny is singularly responsible for why my wife and I are the proud and incredibly fortunate parents** to Sasha (adopted at eight months, now seventeen and a junior in high school) and Karina (adopted at eighteen months, now eleven and in fifth grade)*

Mark Segal, Publisher of Philadelphia Gay News, wrote a heartfelt letter to the court describing Mr. Smukler's efforts on behalf of the LGBT community. In his plea for leniency, he writes *"I do not believe society would benefit from sending Ken to prison....I believe he can be of better service because he has already help serve many different communities in Philadelphia, including LGBT, African-American, Chinese American, Chinese American, and Hispanic communities in Philadelphia, and he has done so much because he cares about equality for all.*

As the Court is aware, Mr. Smukler borrowed money from his younger brother Andrew to reimburse the Margolies campaign. In his letter to the Court, Andrew describes his love for his brother, *"he has apologized to me profusely for dragging me into this, and how he used the money and I still love and trust him." "Ken's mistakes did not involve enriching himself ...he went too far to help candidates he worked for and became personally close to and fond of."* In his tribute, Andrew describes the strain that a jail sentence would put on his family, his wife, his three children and his 81 year old mother.

## D. APPLICATION OF THE SENTENCING FACTORS

Applying the statutory factors set forth in 18 U.S.C. § 3553(a) to Mr. Smukler's case further demonstrates that a variance is warranted in this instance.

### 1. Nature of Offense and History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)

#### a. Nature of Offense

**The Brady Counts**

The gravamen of these counts is that Mr. Smukler engaged in criminal conduct designed to induce a candidate for federal office to withdraw from an election. At trial, the Government introduced evidence that in 2012, congressional candidate Jimmie Moore came to the realization that he had to end his campaign against Congressman Bob Brady, and sought the advice of former Mayor Wilson Goode in helping him decide on a course of action. Goode thereafter brokered a meeting between Brady and Moore whereupon **Brady suggested** that he could buy Moore's poll as a means to help Moore remove some of his campaign debts. Thereafter, at Congressman Brady's direction, Mr. Smukler took steps to effectuate the purchase of the poll and organized the payment of monies to Moore's campaign chief.

As the court is well aware this is not an offense that is typically prosecuted by the Department of Justice. In fact, in the 2017 Department of Justice *Manual*, *"Federal Prosecution of Election Offenses"*, under a section entitled "Conduct That Does Not Constitute Federal Election Fraud", the manual lists *"engaging in activities to influence an opponent's withdrawl from an election"*, as conduct that is not a federal election crime. Understandably, the Department of Justice **rarely prosecutes** cases in which one candidate provides a financial benefit to his opponent so that he or she will withdraw from a race. In fact, in this case, the **candidate who offered the financial benefit to his opponent and then directed Mr. Smukler to provide it to his opponent was never charged**. To be clear, we believe that the **Government was correct and compassionate** in its **decision not to charge Congressman Brady** or former Mayor Goode with criminal wrongdoing. Both are outstanding men who dedicated their lives to public service and the betterment of Philadelphia in a selfless way. Obviously, we will always believe that the decision to

criminalize the behavior of Mr. Smukler, Mr. Moore and Ms. Cavaness was neither correct nor compassionate. However, since the **architect of the scheme to buy the poll and to pay Ms. Cavaness has never been (and will never be) prosecuted**, it is clear that this is hardly the type of offense that should be punished with incarceration.

**The Margolies Counts**

These counts involve offenses of causing false statements and making unlawful campaign contributions in the 2014 Congressional race of Marjorie Margolies. The evidence presented at trial was that while running the Margolies campaign, Mr. Smukler allowed general election funds to be spent in the primary, and after losing the election, **he borrowed and spent his own money to replenish the account so that general election funds could be refunded to those donors.** Once again, this is not conduct that is typically prosecuted by the Department of Justice.

Our research reveals that since the creation of the FEC in 1977, there have been a total of nine cases in which the commission has reviewed the refunding of general campaign contributions spent during a primary election. As best we can determine, the **FEC has never referred for criminal prosecution the act of a candidate or campaign committee knowingly and willfully spending general fund contributions in a primary**. Certainly, it would be unimaginable to incarcerate a non candidate for making excessive campaign contributions when the FEC has only ever fined a candidate's committee and never sought criminal conviction for spending excess contributions in a primary. As FEC Commissioner Lee E. Goodman described his frustration with the law in the 2015 Espaillat MUR, "*within these regulatory provisions lurks a legal and practical conundrum…it is impossible for a campaign to spend and refund the same dollar*".

*"The Commission has attempted to reconcile the regulatory conflict between the two provisions of the same regulation in the most ponderous manner, permit the campaign to spend general election contributions before the primary date at the risk of violating the law if the candidate loses the primary election."* *"In a past matter, I articulated in detail my disagreement with this regulatory catch 22, and the impossible quagmire it imposes upon* campaign committees".

Scott Thomas, who served as Chairman of the FEC four times, 1987, 1993, 1999, and 2005 submitted an affidavit to the Court as part of Mr. Smukler's pretrial Motion to Dismiss. ( see attached exhibit B). In it, Mr. Thomas made it clear that he was unaware of *"any enforcement action in which the FEC has characterized the return of monies from a campaign vendor as a campaign contribution under the Federal Election Act."* More importantly, Mr. Thomas informs that he is not aware of "**any instance in which the FEC referred or reported to the U.S. Department of Justice for possible criminal enforcement a matter involving the return of monies from a campaign vendor to a campaign.**"

As the Government has repeatedly argued, Mr. Smukler's conduct in spending general election campaign funds during the primary was not a crime. Ironically, his decision to rectify that mistake by taking personal responsibility for repaying the money was both noble and indictable. Obviously, it is a decision that he will always regret.

This case presents the unusual circumstance where a campaign manager makes the mistake of spending general campaign money during a primary, and then makes the personal sacrifice to borrow money from family and friends so that the campaign would be able to refund those donations after the campaign. It is undeniable that Mr. Smukler went into personal debt in order to

protect the campaign, and to ensure that general campaign donors would be reimbursed. Certainly, this is not a case that involves an offense that calls for a prison sentence.

## b. History and Characteristics of the Defendant

As demonstrated by the letters written to the Court on Mr. Smukler's behalf, and as previously argued, the defendant is a loving father, husband, son, brother, and friend who is devoted to the expansive network of friends and family who value him as a person in their lives. (See attached Exhibit "A"). Ken Smukler has no criminal history, and has led a law abiding life for 58 years. He has spent most of his professional life making positive contributions to the community. The defendant's personal history and character support the Court imposition of a non custodial sentence.

## 2. Purposes of Sentencing – 18 U.S.C. § 3553(a)(2)

Only a sentence that takes into account Mr. Smukler's decent and generous character, and his steadfast loyalty to his friends and family can constitute a "just punishment." Respect for the law does not result from imposing unnecessarily harsh sentences, but just ones that accurately reflect the guiding legal principles discussed throughout Mr. Smukler's Sentencing Memorandum.

The Court also has an obligation to impose a sentence that would adequately deter others (general deterrence) and Mr. Smukler (specific deterrence) from committing crimes in the future. Given the devastation that Defendant's crimes have had on his own life and lives of those dearest to him, the Court should be confident that he will not be engaging in any criminal conduct in the future. Also, as discussed earlier, Mr. Smukler now fully appreciates that seriousness

of the conduct he was engaged in and is truly repentant for what he has done. As such, the likelihood that he will recidivate is very low.

With respect to general deterrence, any notion by a member of the community that they could engage in the sort of criminal activities Mr. Smukler engaged in without fear of being caught and held accountable for doing so is defeated by the fact that he has been arrested, federally prosecuted and will forever be a convicted felon. Mr. Smukler was successfully prosecuted at a trial which received extensive publicity. After his conviction, his prosecutor gave passionate interviews to the media making it clear to all that the Department of Justice will now prosecute these cases in an aggressive fashion. Certainly, a message of deterrence has already been sent.

### 3. The Kinds of Sentences Available – 18 U.S.C. § 3553(a)(3)

The Court has a variety of options with respect to what kind of sentence to impose in Mr. Smukler's case. The Court may fashion a sentence involving fines, community confinement, home confinement, terms of supervised release or a combination of these punishments.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

As stated previously, in the past the Department of Justice has rarely saw fit to criminally prosecute the type of FEC violations involved in this case. In those cases where such violations were criminally prosecuted, the Courts have determined that non custodial sentences were sufficient but not greater than necessary. In 2005, former Mattel Inc., executive Fermin Cuza was sentenced to two years probation for his role in a scheme to hide $100,000 in campaign contributions in Federal and State elections. In 2014, Dinesh D'Souza, was sentenced to probation with community confinement for his role in making $20,000 in illegal campaign contributions. Moreover, in 2017, six defendants were sentenced under 2C1.8, and all six were sentenced below

18

the guidelines range. *United States Sentencing Commission's Sourcebook of Federal Sentencing Statistics, p. 82.* This is not a case where Mr. Smukler derived a financial benefit from his misconduct. To the contrary, he sustained a great financial loss from his conduct. More importantly, since the Government has exercised it's discretion in not charging Mr. Brady or Ms. Margolies with these federal election offenses, it would be unnecessarily harsh to impose a prison sentence on Mr. Smukler.

In his letter to the Court, **Shanin Specter**, a well respected member of the bar, provides his perspective on Mr. Smukler's crimes and his potential sentence. *"I respect the jury's verdict, but two things bother me that bear on the appropriate sentence. First, the illegal acts that Ken was found to have committed are ethically and morally far less blame worthy than acts that have been legalized by the Supreme Court. Yes, one shouldn't use general election money to pay primary campaign debts. Yes, one should not pay an opponent to quit a race. But it's legal to elect or defeat candidates with limitless amounts of money funded by people and companies whose identities are secret. That's worse. If Ken had needed money and had worked for rich and anonymous manipulators of the political process he'd be guilty of nothing and charged with nothing. But he'd be perverting democracy."*

Despite the fact that neither of the candidates involved in this case were charged, the Government did spend an enormous amount of money and time investigating and successfully prosecuting Mr. Smukler at a very public trial. Certainly, candidates and campaigns are now on notice that this conduct is not simply a violation of FEC rules but also a violation of federal criminal statutes. However, no greater good will come from a sentence in which Mr. Smukler is incarcerated. **Larry Platt**, an editor for Philadelphia Magazine who has long "railed in writing against

the culture of political corruption", has also asked for leniency on behalf of Mr. Smukler. "We need to do more than punish bad actors on our public stage, we need to also consider systematic reforms and Mr. Smukler's sentencing can help in that regard…**it is my sincere hope that you consider ways to incorporate into his sentence a way to put his political talents to work reforming our system**".

**Michael Smerconish, Esq**, a friend of 20 years describes his friend as a man with a *"big heart and love of community"*. In his plea for leniency, Mr. Smerconish writes that **"society would be enhanced by having him outside the system"**, and that **"the humiliation of his trial and guilty verdict has been punishment enough."** Mr. Smerconish, like Mr. Platt and so many others who respect Mr. Smukler's commitment to our Philadelphia community, is hopeful that this court can fashion a probationary sentence that will help utilize Mr. Smukler's talents to help further improve our community.

### CONCLUSION

Ken Smukler is 58 years old and has no criminal record. He is a devoted father, son, brother, husband and friend. He has spent his public life fighting for the disenfranchised and has spent his personal life caring for his wife, children, family, and friends. This prosecution has had a devastating effect on his professional and personal life. He will never be able to work in politics again after having spent a career helping many dedicated public servants gain elected office, and making sure that they serve the people that elected them. He has lost his ability to support his family, and must now sell his home. Mr. Smukler stands at the mercy of this Court recognizing that he has broken the law. He humbly urges the Court to take into consideration the fact that

his conduct was not motivated by greed or corrupt motives. It would be a tragedy to separate

him from his loving family for any length of time. Based on the aforementioned reasons, we

urge the Court to grant a variance and depart well below the designated guideline range and im-

pose a non-custodial sentence. Such a sentencing would be "sufficient but not greater than nec-

essary" to accomplish the purposes of punishment set forth in the federal sentencing scheme.

Respectfully Submitted,

**BRIAN J. MCMONAGLE, ESQUIRE**

# EXHIBIT "A"

15 APRIL 2019

DEAR JUDGE DUBOIS:

I WRITE IN SUPPORT OF LENIANCY
FOR KEN SMUKLER. I'VE KNOWN
KEN FOR 20+ YEARS. WHILE NOT
IGNORING THE TRANSGRESSIONS THAT
BROUGHT HIM BEFORE YOU, I BELIEVE
HIM TO BE A GOOD PERSON WHO
IS REMORSEFUL ABOUT HIS ACTIONS.
KENNY HAS A BIG HEART AND LOVE
OF COMMUNITY. I BELIEVE SOCIETY
WOULD BE ENHANCED BY HAVING HIM
OUTSIDE THE SYSTEM. QUITE
FRANKLY, THE HUMILIATION OF HIS
TRIAL AND GUILTY VERDICT
HAS BEEN PUNISHMENT ENOUGH.

OVER MANY DECADES I'VE WATCHED
YOU EARN A REPUTATION FOR
FAIRNESS. I KNOW THAT WILL
GOVERN YOUR DECISION. THANKS
FOR CONSIDERATION.

The Honorable Judge Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106


Dear Judge Dubois:


I appreciate this opportunity to write to you about my younger brother, Ken Smukler, who will appear before you for sentencing shortly. Ken has been not only a close sibling, but a great and trusted friend through my adult life.

I am sure you will receive many letters from Ken's friends and family saying what a great and loving father he's been. He is very involved in all their lives and rarely missed their games, matches or performances. I have seen his relationship with his three girls up close at family vacations and gatherings, and frankly wish that my kids adored me as much as his kids adore him.

Ken has many great qualities. He is a genuinely good guy. He has a big heart and a big personality. One of his best characteristics came through when he eulogized our father about six years ago. He captured the essence of our dad's life beautifully for every one that was there that day, and lifted our family's (and particularly my mom's) spirits when we (she) needed it most.

As you may remember, part of the case was my loan to my brother. The reason I gave him the money was because I love him and trust him. He has apologized to me profusely for dragging me in to this, and how he used the money. And I still love him and trust him.

As I was part of the case, I am fully aware of what Ken did and why he is coming before you. With the news so full of Paul Manafort, it has been hard for me to not constantly be reminded of the jeopardy Ken is in. But I have

cheered myself (and others I hope) with a focus on the fundamental difference between's Ken's case and those of other white-collar felons: Ken's mistakes did not involve enriching himself. He went too far to help candidates he worked for and became personally close to and fond of. He knows he crossed a line and has expressed a great deal of remorse to me and others.

Now Ken, as a nearly sixty year old man, hopes to get on with the remainder of his life and continue being the good father, husband and friend he has been in the past. I am confident that there is no chance that Ken will commit these crimes or any crimes ever again, and that no one will benefit from my brother serving any time in jail. And the strain that a jail sentence would put on our family, his wife, his three terrific kids, and especially his 81 year-old mother would be awful.

Lastly, while Ken has led an exemplary life in many ways, concern for his personal health has not been one of them. I believe that any prison time would present significant health challenges for someone in Ken's physical condition.

Sincerely,

Andrew Smukler                  3/9/19

Constance Smukler

The Honorable Paul E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re: Kenneth Louis Smukler

Dear Judge DuBois,

As Kenneth Smukler's mother, I am blessed with three amazing boys, and their adoring granddaughters. From their first breath, letter has been totally dedicated to all to pushing his sons nurturing. He is wholly committed to each one of those young boys, especially a constant remember any of their activities he has does willingly missed.

You realize he has made serious mistakes. You are not paying the price, particularly Kenny. Kyla and Camille. I cannot imagine his traumatic separation from a society.

Respectfully yours,

campaigns. I know the rules he was found to have broken. I am not going to tell you he didn't do it; I respect the jury's verdict.

But two things bother me that bear on the appropriate sentence.

First, the illegal acts Ken was found to have committed are ethically and morally far less blameworthy than acts that have been legalized by the Supreme Court. Yes, one shouldn't use general election money to pay primary campaign debts. Yes, one should not pay an opponent to quit a race. But it's legal to elect or defeat candidates with limitless amounts of money funded by people and companies whose identities are secret. That's worse.

If Ken had needed money and had worked for rich and anonymous manipulators of the political process, he'd be guilty of nothing and charged with nothing. But he'd be perverting democracy.

Ken chose instead to make little money and help local pols deep in the bowels of the sometimes grimy world of Philadelphia politics. These candidates didn't have the largesse of billionaires and big companies and their legal, but dark and anti-democratic money. Ken was found to have committed process crimes when the process is regularly and legally but sadly manipulated and no one is charged or convicted.

Second, the real beneficiaries of Ken's efforts were not charged. I am not saying they were guilty of anything; I don't know. But it is relevant to the gravity of Ken's offenses that the real beneficiaries were not charged.

Thank you for your consideration of this letter.

Respectfully,

SS/dg

Robert A. Brady
Chairman

Telephone: (215) 241-7800

April 14, 2019

The Honorable Jan E. DuBois
United States District Judge
United States District Courthouse
601 Market Street
Philadelphia, PA 19106

Your Honor:

Please accept this letter as a request for leniency in the sentencing of Ken Smukler. As you will see, Mr. Smukler has spent the last decade working selflessly to make our city and region a better place to live. He has done so not in search of fame or fortune but quietly behind the scenes to support the efforts of others, most notably me.

I met Kenny decades ago when he worked for Mayor Wilson Goode and I was newly elected Democratic Party Chair. We started collaborating on projects shortly after I lost the 2007 mayoral primary. Kenny would travel with me once a week back and forth to my congressional office in DC. During this time together, Kenny would develop projects for me with the goal of using my leadership positions in the local Democratic Party and Congress to make Philadelphia better.

I have received much praise over the past decade for projects that Kenny created and worked tirelessly behind the scenes to see through to successful conclusion. The following are a list of these projects and what I know first hand to be Kenny's role in them.

On Christmas Eve Day 2008, I got a call from the head of the Mummers telling me that the city was threatening to cancel the Mummers Parade a week away unless the Mummers came up with $200,000 for the previous year's parade costs. I called Kenny who was away on a family vacation. Kenny and I worked out a gameplan in which we would raise the money and alert the press that I was going to save the parade. We raised the money and saved the parade.

In 2009, the city was threatening to shut down the Odunde Festival - the nation's oldest annual African-centric festival - over its failure to have its vendors register 48-hours prior to the festival. As such a requirement would require these vendors to travel to and stay in Philadelphia days before the parade, what the city was asking Odunde vendors to do would have led them to pull out of the festival and killed this one-of-a-kind festival.

Odunde's leadership reached out to me and I asked Kenny to meet with city officials and see if he could find a workaround solution. After multip[le meetings and conference calls with Odunde and city officials, Kenny found an agreeable solution and the Odunde Festival was saved.

The outgrowth of these efforts was Kenny's idea to create the Greater Philadelphia Traditions Fund - a non-profit that has raised over a million dollars over the last decade dedicated to supporting Philadelphia's ethnic parades and festivals.

In 2008, Kenny came up with the idea to host the presidential primary debate between Barack Obama and Hillary Clinton at the National Constitution Center. The idea came to him on our ride back to Philadelphia from my DC office. Kenny got on the phone with his friends at NBC and I started working the phones with the presidential campaigns. Weeks later, the national press descended on Philadelphia for the debate showcasing the National Constitution Center and our city.

In 2009, the Nutter administration announced that the city would not be hosting the Dad Vail Regatta - one of the premier collegiate regattas in the country - and that it was moving to the Cooper River in Rumson New Jersey. Kenny immediately put together a plan of action to stop the move. He asked me convene a meeting with the mayor to stall for time. He worked with the premier collegiate crew teams around the country telling them not to commit to Rumson for at least two weeks.

He sent one of his assistants to the Rumson City Council meeting where it became clear that Rumson did not have nearly the infrastructure required to host a regatta of this size. Kenny then went to the press and blew up Rumson as an alternative site for the Regatta. Within weeks the city and Dad Vail Committee announced that the regatta would stay in Philadelphia, which it has ever since.

In 2010, Kenny was the first to raise the idea that Philadelphia should host the Democratic National Convention. At his request, I convened a meeting with Mayor Nutter and Comcast's David L. Cohen to discuss a city bid for the 2012 convention. Ultimately, Mayor Nutter decided against such a bid but committed to a bid in 2016.

In 2010, a national study was released showing that my congressional district was the second hungriest district in the nation. This was in large part due to the hunger desert in the City of Chester - a community that for years prior to the study had no supermarket within its city limits.

I asked Kenny to focus his efforts in this area and he immediately reached out to Philabundance - a leader in food distribution for the neediest communities across our region. Working with the City of Chester and state and private funding sources, Kenny and I raised $4 million and delivered Fair and Square - the first-of-its-kind hybrid supermarket/pantry - breaking ground in 2012 and opening in 2014.

In 2011, Kenny and I got involved with the annual Toy Run. The motorcycle parade that delivered toys to children at CHOP around Christmas was in jeopardy as CHOP officials feared the congestion it caused around its emergency room. Kenny worked with the Toy Run

leadership, CHOP and Drexel University administrators, and the city officials to re-route the parade to allow a smaller motorcade to drop toys at CHOP while the larger motorcade dropped the bulk of its toys at a Drexel University parking lot.

In 2012, Kenny worked with these stakeholders and the Phillies to re-route the Toy Run to the Phillies parking lot. In 2013, Kenny worked with Sugar House casino to provide sponsorship for the Toy Run.

In 2013, the city threatened to pull its support from the International Cycling Championship - a cycling race held annually since 1985 featuring a climb up the Manayunk Wall. Kenny came to me believing that we could save the race. He convened stakeholders including City Council members, bike coalition members, and the Manayunk Business Association to save the race. He identified a new management and sponsorship team, helped redesign the course, and presented city officials with a completely new race with sufficient funding to save it.

In 2014, Kenny again renewed our efforts to bid for the Democratic National Convention. He convened two meetings of stakeholders to identify the political, financial, and community support for the bid. When Mayor Nutter dragged his feet, it was Kenny who drafted the council resolution expressing its unanimous support of the bid. It was Kenny who identified the initial leadership team for the bid. It was Kenny who identified the consulting team that wrote the winning bid. It was Kenny's idea to name Ed Rendell chair of the committee. In short, without Kenny Smukler's efforts beginning as far back as 2010 - 6 years before the convention came to Philadelphia - I'm not sure we would have had this convention.

In 2017, Kenny got a call from Larry Needle, head of the Philadelphia Sports Congress, who was having difficulty in the negotiations between the city and the National Football League over bringing the NFL Draft to the Benjamin Franklin Parkway. It was Kenny working at my side who forged the final agreement between the city, our labor unions and the NFL that brought the NFL Draft Week to the city.

Finally in 2017 when it became known that the negotiations between the city and Conrail were breaking down over the clean up of what had become known as the "Heroin Hellscape" - a needle park alongside the Conrail tracks in Kensington - Kenny asked me to call the parties into a face-to-face meeting. Within days the parties came to agreement and within weeks, the Hellscape was cleaned up.

And while taking on all of these projects, he was building technologies that helped literally millions of American citizens exceeds their right to vote. I know of these national voting rights efforts firsthand as well. As Chair of the Congressional Committee on House Administration, I and my committee were responsible for the oversight of federal elections. In 2012, I called upon Kenny to testify on Capitol Hill about the findings of his national voter hotline following the presidential election that year.

I never paid Kenny Smukler to do any of this work. He never asked for a dime for his efforts. Yet his efforts were directly responsible for bringing literally millions of dollars into our city. His efforts have helped alleviate the pain of living in a food desert, cleaned up a neighborhood riddled by the heroin epidemic, and saved the identity of our city played out each year in our ethnic parades and festivals.

Kenny never asked for public notice of his efforts, he never sought the spotlight for his role in any of these efforts. He did it out of our friendship for one another and as his way of giving back to the city that both of us love.

I have written many letters like this for friends of mine who have found themselves in the circumstances Kenny now finds himself in. Some have been elected officials, some private citizens. None of them have shown the selflessness in helping others as Kenny has. Few have have had the positive impact on our community that Kenny has delivered.

I ask that you take all of Mr. Smukler's contributions into account at sentencing.

Thank you for your time and consideration.

Sincerely,

Robert A. Brady
Chairman

Shanin Specter, Esq.



February 8, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge DuBois:

I am writing in relation to Mr. Ken Smuckler who is to be sentenced by Your Honor on March 13.

I have known Ken for all of my adult life. Ken's parents were close friends of my parents. I met Ken through mutual friends. We share an interest in politics and have spent many hours over many years talking about politics and related subjects.

Ken comes from a wealthy family. He inherited a large amount of money. That gave him the freedom to do what he wanted to do, which was to work in politics.

Over the years, we have worked on the same side sometimes and on the opposite side sometimes. For most of Ken's political work, I've not supported either his client or the opponent.

Ken has worked for some fine people and for some who have lesser reputations. Some of us have wondered why Ken would take on some of these clients. But no one thought he did so to make money or to advance a specific or improper agenda. And I believe no evidence was presented at trial that he was motivated by such considerations.

Rather, Ken has always seemed to be motivated by the electoral battle and the struggle itself, regardless of who his client might be. There's nothing legally, ethically or morally wrong with that. But by working with lesser reputed figures, Ken exposed himself to the legal vagaries and bad habits of their worlds. That is not a crime and should not be punished.

I know the specific behavior for which was Ken convicted. He was found to have broken the law in connection with the financing of political

February 11, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Kenneth Smukler

Dear Judge DuBois,

My name is Melissa Brown. I am a retired eye surgeon who was a clinician, researcher and teacher as a Professor of Ophthalmology at Wills Eye Hospital and Thomas Jefferson University. My husband and I lived in the Philadelphia area for 40 years. Currently I do medical economic research since moving to South Carolina three years ago.

None of that seems particularly relevant when I think about Ken Smukler. I met Ken at my home in 1997 when I was first considering running as a political candidate. Watching him cross the driveway, I thought he was the gas company worker coming to read my meter. However, I was mistaken. Since that time, I have known Ken as a political consultant, mentor, friend and finally the closest of friends and confidant. His actions earned those relationships.

As a consultant, he mentored me and basically taught me how to be a candidate. Being a physician, one can imagine I needed mentoring in many aspects. Never, at any time, did Ken make me feel ignorant nor inexperienced, despite the fact that I, most certainly, was. Despite losing campaigns, his mentoring has allowed me to become much more confident in every way, changing my life for the better along the way. As a teacher, he unquestionably excels.

I learned by example. During the campaigns, he would take me to work on houses for Habitat for Humanity. Others at the construction site certainly knew him from prior times helping. Clearly, his thoughtfulness and willingness to offer help and talent extended far beyond my sphere.

Also, during this time, my husband became gravely ill. Upon hearing what I thought was essentially a death sentence for him, I didn't call my father, my brother, nor my close girlfriends. I called Ken who talked me through a very long night and days to come. His multiple trips to the University of Pennsylvania as well as the University of Maryland in Baltimore during my husband's extended recovery were godsends. It is difficult to repay that kind of debt. In a weak effort, I left my husband in good care in

South Carolina and traveled to Philadelphia to be supportive of him for the duration of his trial. In fact, the day following the conclusion of his trial, he sat with me, at the University of Maryland Medical Center, for the duration of my husband's recent surgery, despite my attempts to dissuade him from making the trip at such a difficult time for his family.

His ability to listen, sympathize, yet help me consider actions going forward is, and was, exceptional, and appreciated more than one can imagine. In subsequent years, he has extended that sensitivity and thoughtfulness not only to my husband but to each of our three daughters as they moved from high school, thru the ups and downs of college, to become grown women with families. He was always there for them, particularly the tough times, with a helping hand.

It is clear that Ken is remorseful for the actions taken during the campaigns outlined at the trial and understands that consequences are to be taken. Given his abilities to listen, teach and support in the most positive of ways, I believe his talents could greatly benefit society in community settings. I believe that almost any organization that relies on volunteers would benefit from his participation, whether it be Habitat for Humanity, Red Cross, or SCORE (fosters small business development through workshops and mentoring). From my experiences over many years and in numerous challenging situations, Ken has made an extraordinarily meaningful difference in my life and the lives of others. I am certain he would do the same as a volunteer. His heart has always been in the right place.

I very much appreciate the opportunity to write this letter in support of Ken Smukler and earnestly hope his actions toward my me, my family, and for the community as outlined above, speak volumes about his character and talents when sentencing is considered.

Respectfully,

*Melissa M. Brown*

Melissa M. Brown, MD, MN, MBA

# ODUNDE

"In the Spirit of our Ancestors"

April 12, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Ken Smukler

Dear Judge Jan E. DuBois

I am writing this letter on behalf of Ken Smukler. I have been friends with Ken Smukler for over 10 years. I believe I am in a position to speak to Ken Smukler's moral character and I hope you will take this letter into account when your making your decision.

Ken Smukler is a good person. He has always been kind and compassionate to others. He has a strong sense of duty, which applies to his friends, family and community. He has been a friend of ODUNDE for over 10 years.

It must be difficult for you make decisions like this when you don't actually know the person standing in front of you. I hope you will look at my letter and the countless others you're receiving and understand that Ken Smukler is the kind of person that is an asset to our community.



Thank you,

Oshunbumi Fernandez-West
CEO



LAW OFFICES
# KELLY & HERRON, P.C.
1500 MARKET STREET
CENTRE SQUARE - WEST TOWER
SUITE W-3110
PHILADELPHIA, PA 19102-2167
(215) 972-1500
FAX (215) 972-8217

KEVIN P. KELLY
lkkelly@kellyherronlaw.com

PAUL L. HERRON
pherron@kellyherronlaw.com

SUBURBAN OFFICE
845 KING OF PRUSSIA ROAD
RADNOR, PA 19087

February 19, 2019

The Honorable Jan E. Dubois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

      RE:  United States of America vs. Ken Smuckler
           Case No.: 2:2017cr00563

Dear Judge Dubois:

    In the near future my dear friend Ken will be appearing before your Honor for sentencing in connection with the above-captioned proceeding. I have known Ken for over a decade. Our daughters attended Gladwyne Montessori School and The Agnes Irwin School for Girls in Villanova, Pennsylvania. Our relationship began through the Upper Main Line "Y" Indian Princess program. This program schedules father/daughter weekends at various YMCA camps in Pennsylvania and Maryland. The object of the program is to allow fathers and daughters to develop a close relationship while also forging parent relationships among participating members. Ken and I participated in this program for several years which served as the foundation of our close friendship and has continued up to the present time, with our daughters either attending or having graduated college.

    The relationship I developed with Ken is of a close and continuous nature. Most of the dads who participated in the Indian Princess program have remained good friends and served as a support group for Ken and Shelley.

{141263:1}

# KELLY & HERRON, P.C.

In my years of friendship with Ken, I can honestly say that he has been an excellent father and a family man. Several members of this close knit group have traveled extensively together, including a wonderful trip to France for all the families.

I have always found Ken to be honest, helpful and a friend that I could depend upon in the event of need. He and his wife, Shelley, are truly exemplary parents and have afforded their children the best education and provided them with excellent grounding which in a large part is exemplified by their achievements and successes in life. It has been my personal experience that Ken is an intelligent, high quality, motivated person who is worthy of my trust and respect.

There is no doubt that Ken's indiscretions with respect to the FEC violations are of the serious nature. However, it is also important to note that Ken's intentions were not motivated by financial gain but rather as a means of attempting, albeit improperly, to obtain the best results for candidates he supported during the political campaigns. It is my understanding that Ken did not acquire any pecuniary gain associated with his indiscretions, which at least in part, demonstrates his motives were with good intentions. It is also noteworthy that some of his actions were based upon reliance of a former FEC Commissioner-attorney.

As an attorney practicing for forty (40) years, I have some understanding of the complexities of the FEC violations and, the technical nature of the violations of which Ken was found guilty. We have had several conversations about this matter and without hesitation, I know he regrets how the campaigns where handled and while his errors in judgment were not motivated by malfeasance, they were nonetheless bad decisions. I know Ken is dealing with his indiscretions in a constructive manner and moving forward with his life and family. Obviously, this is Ken's first brush with the law and therefore, I believe, as to his sentencing, he is certainly a worthy candidate for probation. Candidly, I do not believe that Ken would benefit in any cognizable way from confinement and based upon Ken's

# KELLY & HERRON, P.C.

background incarceration would be detrimental to not only him
and his family but also to his reputation as a political
consultant which, as the Court knows he has done for several
years, successfully.

I truly hope the Court will give serious consideration to a
sentence which befits violations of the FEC Rules and
Regulations and permits Ken to continue with his life in a
positive and constructive way.

I appreciate the Court's time and consideration in reading
my letter.

Respectfully,

KEVIN P. KELLY

KPK/jl

31 January 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE: Kenneth Smukler

Your Honor:

For more than twenty years, the Smuklers have lived three houses down from us. Our families shared camping, beach time and local sledding. Ken has always been a kind, engaging, compassionate father and neighbor.

I attended Ken's trial and understand the situation.

Professionally, Ken Smukler is a loyal, bona fide American who courageously battles for the common man. Ken's work is truly patriotic.

While my wife battled cancer, Ken was a steadfast friend and an infinite source of resolve for my family and me. I truly cherish Ken Smukler, my friend.

As a Montgomery County PA citizen, I respectfully beseech you, Judge DuBois, to issue the minimum sentence to Ken.

Society is better served and the United States of America is elevated with Ken Smukler in the community.

Thank you for your consideration.

Sincerely,

Kevin S. Christine

LAW OFFICES

# MARGUERITE M. NEALON, P.C.

SUITE 225
1235 WESTLAKES DRIVE
BERWYN, PENNSYLVANIA 19312
(610) 649-1800
FAX (484) 598-2101

WEBSITE http://www.pafamilylaw.com
EMAIL: Margueriten@pafamilylaw.com

PHILADELPHIA COUNTY OFFICE
SUITE 200
135 S. 19TH STREET
PHILADELPHIA, PA 19103
(215) 563-1970

REPLY TO BERWYN

OF COUNSEL:
S. STACY MOGUL, ESQ.

LACKAWANNA COUNTY OFFICE
SUITE 601
108 N. WASHINGTON AVE.
SCRANTON, PA 18503
(570) 341-5592

REPLY TO BERWYN

February 19, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re:     Kenneth Smukler
        Sentencing Date: March 13, 2019 at 12:45 pm

Dear Judge DuBois:

I am writing to you on behalf of Ken Smukler. Ken and I have been friends for more than twenty (20) years. We met through our daughters in nursery school and our families have been best friends through all of these years raising our children.

First and foremost, Ken is a dedicated and loving father. He, along with his wife, Shelly, have raised three (3) of the finest young women. Over the years, enjoying holidays, vacations, special events and many dinners, I observed Ken interact with his children with warmth, kindness, generosity and humor. He was always there for his girls and is their biggest fan. Ken never missed a game, a match, a recital or a presentation. It was a labor of love for Ken. He puts family first and loves to spend his time with them. Ken is also a devoted husband, son, son-in-law and brother, who enjoys close family relationships.

Ken is the type of person who as a grandson did cross word puzzles with his failing grandmother, as a friend stayed in the hospital during a friend's surgery, and regularly visited a mutual friend dying of cancer. He has always been generous with his time, loyal to the core, and present for his friends in good times and bad times.

I understand that Ken has been convicted of multiple campaign finance violations and will appear before you to be sentenced. It is my understanding that Ken has many regrets about the violations but his main goal now is to be accountable and protect his family. Despite some mistakes, I have been impressed by his honor and his willingness to help his political candidates.

Now, Ken wants to move forward with his life and learn from his mistakes. This case has caused considerable emotional distress and has been financially draining on Ken, his wife and children. I do not feel that our society would benefit from sentencing Ken to serve any time in prison. Ken and his family have been punished enough. Our society would best be served by punishing Ken with a fine and probation allowing him to move on with his professional, personal and family life.

Thank you for considering the above remarks.

Very truly yours,

Marguerite Nealon



The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE: Ken Smukler

Dear Judge DuBois,

I have known Ken Smukler for twenty years. In recent years Ken and I worked together to bring city advertising to minority newspapers, among them *Al Dia, Metro Chinese Weekly, The Philadelphia Sunday Sun*, and the *Philadelphia Gay News*, of which I am the publisher. As a gay man, I have always had to fight for equality for my community and for my newspaper. Getting city advertising in a local newspaper might seem like a small victory compared to issues like marriage and adoption, but I believe these small victories matter just as much, and Ken helped make this one a reality. Ken has always been a supporter of the LGBT community. I believe that his work to bring advertising to the PGN and other minority newspapers speaks to his good character. He has put himself in our shoes and has helped us climb the ladder to equality.

I am writing this letter of support because I believe Ken is a good person. I understand the crimes that Ken has been found guilty of. I believe that he is sorry for what he has done. I also believe that he understands that he has not only let down himself, but his family as well. Ken has always been a loving husband and father. He cares about his three daughters and setting a good example for them. He and his wife, Shelly, have been wonderful parents and have raised their children with honesty, compassion, and love. They are good people.

I do not think society would benefit from sending Ken to prison, and I believe a prison sentence would be detrimental to all concerned. Ken understands the gravity of his crimes and will do what is necessary to atone for them. I believe he can be of better service to society doing community service because he has already helped serve many different communities in Philadelphia, including the LGBT, African-American, Chinese-American, and Hispanic communities in Philadelphia, and he has done so because he cares about equality for all.

Respectfully Yours,

Mark Segal
Publisher, Philadelphia Gay News

March 29, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge DuBois,

I am writing to you regarding the forthcoming sentencing of Ken Smukler.

I have known and been friendly with Mr. Smukler for nearly 20 years and have always found him to be a straight-shooter and, critically, a patriotic Philadelphian.

In my capacities as editor of Philadelphia Magazine and the Philadelphia Daily News, and now in my role as the co-founder of the nonprofit solutions-oriented website The Philadelphia Citizen, I have been impressed by Mr. Smukler's commitment to public service and his insights into ways to make our city better.

I have long publicly railed in writing against the culture of corruption that has characterized our town's political life, and it's my firm conviction that we need to do more than just punish bad actors on our public stage. We need to also consider systemic reforms, and Mr. Smukler's sentencing can serve as an opportunity in that regard. It is my hope that you consider ways to incorporate into his sentence a way to put his political talents to work reforming our system.

Mr. Smukler is a tremendously talented thinker about politics whose career demonstrates a commitment to Philadelphia. I respectfully request that you find a way to use his talents to help improve our community.

Thank you for your consideration.

Sincerely,

Larry Platt

# JACOBSEN LAW OFFICES LLC

e-mail: jacobsenlaw@aol.com
website: jacobsenlaw-pa.com

5 East Rose Valley Road
Wallingford, PA 19086

Telephone: 610-566-7930

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

February 28, 2019

Re: <u>Kenneth Smuckler</u>

Dear Judge DuBois:

I am writing on behalf of Kenneth Smuckler, who is scheduled to be sentenced by Your Honor on March 13, 2019.

I have known Ken for 27 years on both a personal and professional level. We have socialized extensively during that time. We also met regularly to discuss various business ideas that each of us had. As an entrepreneur involved in various business ventures, I always valued Ken's perspective and insights. Based on these extensive interactions over several decades, I believe that I have a pretty good sense of Ken's character and integrity.

I am fully aware of the seriousness of the charges against Ken, and his conviction. I attended parts of the trial, including closing arguments. I have tried to provide moral support to Ken throughout this process, including sending periodic texts to keep his spirits up. The criminal charges, trial and conviction have been an ordeal, and have taken an obvious toll on Ken's mental and physical health. They also have ruined him financially.

I do not minimize or excuse the seriousness of the charges on which Ken was convicted. Nor does he. But the Ken Smuckler that I know is a loving father and husband. He is a loyal friend. He is smart, kind, generous with his time and, despite what may have been depicted at trial, has a keen sense of humor and joy for life. I cannot remember a meeting with Ken—ever— where the first topic of conversation was not his family: his wife, daughters, college visits, family vacations, his daughters' personal and career interests. Those were the things most important to Ken, and still are. He is incredibly proud of them, and loves them deeply. Their lives, like his, have been impacted by his conviction, and I know that Ken feels as badly about that as he does his own personal problems and uncertain future.

Ken may have ruffled some feathers in the rough and tumble world of politics, and perhaps even made some enemies along the way. But he has made many more friends and supporters, and I am proud to consider myself one of them.

Ken knows that what he did was wrong and illegal. He is deeply remorseful. I most respectfully request that the Court consider a sentence of probation for Mr. Smuckler. I do not

believe that society would be served by sending Ken to prison. Ken has learned his lesson. He will not repeat the conduct for which he was convicted. Please allow him to start to rebuild his life and family, and remain a productive member of society.

Thank you for your consideration.

Respectfully,

Kenneth A. Jacobsen

March 8th, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Ken Smukler

Dear Judge DuBois,

I am writing to provide a bit of background on the character of my good friend Ken Smukler. I have known Ken for no less than 31 years. I am 52 years old now, so I can honestly say that I have known him for all of my adult life. We met on my first campaign experience during a semester I took off during college way back in 1988. He was my immediate boss on the Herb Kohl for US Senate campaign that Summer and Fall. We have worked together in many capacities on and off throughout the years since and I always look forward to the next opportunity where are paths might cross either in business or personally. Our relationship started as a work relationship, but grew to a great friendship that I have been proud of and always will be.

Ken and Shelly started their family a bit before my wife Lisa and me. It was interesting in that they had their three daughters a few years earlier than we had our three daughters. Ken was always a wealth of knowledge and advice on the parenting front for me. As I was pulling out my hair with dealing with the early days of fatherhood, he was always a calm mentor that would know just what to say to talk me down off the ledge so to speak. As a matter of fact, I would have to accredit some of my best times as a parent to advice that Ken has given me in the past. Over time, it became clear that Ken and Shelly made it a priority in their lives to travel with their family. Ken gave me advice on traveling alone with each daughter. How that individual time is so important and how it had been a great experience for both he and his daughters. This was a practice that we introduced in my family with father-daughter trips with each of my daughters. He was right, I think if you asked any of my three girls, they would all tell you that the father-daughter trips we had taken provided some of their best experiences as a kid. I know it helped me to get to better know my kids. I will be forever thankful for Ken's advice.

On July 19, 2015, at the age of 47, I suffered a cardiac arrest. I was out for 35-45 minutes, no breaths and no palpitations. This happened in my own home while watching a family movie with our girls. There were no warning signs. Here I am; a 12 time marathoner, a 3 time cross-country biker, and an ex-college tennis player who still plays 3 times a week competitively, and I suffered an electrically induced cardiac arrest. Only through the Grace of God working through my family and those around me including the EMS team and a local ER doctor who showed up with the paddles to defibrillate me 4 times in my basement am I here to talk about it. I was in an induced coma for 3 days before they tried to bring me out. As I was waking up, one of the first voices I heard in the ICU was that of Ken's. After receiving a call from my wife of what had happened to me on that Sunday night, Ken dropped everything to come to Janesville, WI and be by my side. It turns out he was actually on his way to the airport that day for a business trip when he got the call, but that didn't matter. He re-worked his schedule in a moment's notice and jumped on the next plane he could to get to me and my family in our hour of need. He was

there to help take care of any of the needs of my family during this crisis. No one asked him to come, it is just something in his character to come to the aid of a friend and his family. It is my understanding he bought meals for my family and visitors at the hospital while there. I will forever be thankful for Ken's generosity during my family's hours of need.

Throughout the 30 plus years I have known Ken, I would consider him one of my absolute dearest friends. In that time, I have grown from a young, very green business owner/political consultant to a definitely not so young business owner. Throughout my career, Ken has always been one of my first calls while I was in the midst of the plethora of daily dilemmas that come along with running your own business. I would call to pick Ken's brain on issues as they came up because in many ways he was similar to me. He has always been a rational, voice of reason. He would give it to me straight, many times telling me not what I would want to hear, but what was right; both ethical and legal.

In closing, I would like to ask the court for leniency when it comes to Ken's sentencing. As stated, our lives as friends and colleagues have intersected throughout the years. During that time Ken has demonstrated by his actions and his words a long list of fantastic qualities and characteristics that make him who he is today. It is because of those characteristics that I intend to keep Ken in my life. Ken has always been there for me and I intend to always be there for him.

I would like to thank you in advance for your time and consideration.


Respectfully yours,

Dan Langer



Suzanne Weintraub

March 7, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Ken Smukler

Dear Judge DuBois,

I am writing in support of my friend, Ken Smukler. My husband and I have been friends with Ken Smukler and his wife, Shelly, for approximately 10 years. We first met the Smuklers when our daughter started as a new student at the Agnes Irwin School where Ken and Shelly had been part of the community for many years. As new parents to the school, we were slightly intimidated by the existing social circles. Not being from the Philadelphia area, we felt like outsiders. It took only a month or two for Ken and Shelly to reach out and include us in various activities. They immediately introduced us to other families, made sure we felt included, and helped us navigate the school for our daughter. As newcomers to their community, my husband and I always felt so welcomed even though we weren't from the area.

I was able to get to know Ken in a professional manner through my work in political advertising. Ken hired me multiple times as a voice over talent for the ads he created for various campaigns. He was always completely professional, highly respectful, and open to collaborative feedback. It was always a joy to work with Ken.

The one trait of Ken's that I value is his total acceptance of people regardless of economic, religious, racial or social background. Ken is never judgmental. He truly enjoys meeting and knowing people from all backgrounds. He is loving and gregarious and always greets people with big hugs.

I attended the trial during the month of November to support Ken, Shelly, and his mother, Connie. Many days the courtroom was filled with Ken's friends and family who were there to show him their love and concern. It is obvious that Ken is in a lot of trouble and is deeply concerned for his family. I can see the toll this has taken on Ken and his wife and children. He is not the same man I have known for the last 10 years.

Judge DuBois, I know that this is excruciating for Ken and, while I am not certain of the jury's decisions, I know that sending Ken to prison would not benefit anyone. It would tear his family apart and destroy him. Ken Smukler is a good man who seems deeply remorseful for any actions that were found illegal.

Respectfully yours,

Suzanne Weintraub

Honorable Judge DuBois
US District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re: Kenneth Smukler

Dear Judge DuBois,

I write to you on behalf of Kenneth Smukler.

I have known Ken my entire life, and he has been a friend of mine for 22 years. Our families met because my older sister and his middle daughter, Phoebe, became best friends at age 2. As a result of spending a lot of time with his daughters, Ken became my friend. It is a testament to the special relationship our families developed, and his respect for people of all ages. From a young age, Ken has made sure I felt included and supported me in all my endeavors, even when his daughters were not involved.

Around age six, my sister and all the Smukler girls had nicknames and I felt excluded. Ken, who was always engaged, noticed this and came up with a nickname for me, "Mojo". It sticks to this day, and it made me feel included. He looks out for people, brings people together and does whatever he can to help. In more recent times, Ken has attended my high school and college soccer and basketball games, and he helped me with a college assignment. He went above and beyond to make sure that I succeeded with my assignment.

Because of our close friendship, I am aware of the situation he is in. Because of his unwavering support for me the past 22 years, I attended several days of his trial; and he and his family have earned my support completely. He is a committed father, husband, brother, son, uncle, and loyal friend. Ken is an extremely smart and educated man, and he understands the mistakes that he has made. It would be a disservice to the community, and more importantly to his family to send Ken to prison. His family has been through enough. He has always been an active member in society and in the lives of many, so I am confident that he has learned from his mistakes and will continue to make a positive impact.

Respectfully yours,

Maria Kilcullen

*Maria Kilcullen*

March 6, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE: Kenneth Smukler

Your Honor,

I am writing on behalf of Ken Smukler who will be sentenced on April 19, 2019. I have known Ken since 1974 when we met in high school. We have remained best friends since then. Ken was in my wedding party in 1987. Our families have vacationed together, and I see and speak with Ken several times a month. I do not have a brother but consider Ken my brother. After 45 years, our relationship and bond has grown stronger year after year.

I certainly understand the very serious nature of Ken's situation. I was in the courtroom during his trial. Ken and I have spoken dozens of times and I have seen the impact this has had on him, his wife Shelly, and his 3 daughters. This period has been extremely difficult for all of his immediate family, yet I know his circle of friends and family have stood by him with total support. Even in this time of wrong, friends like myself never abandoned Ken and tried to make his and his family's life as normal as possible.

There are many instances where I reached out to Ken for help, but I'd like to tell you about this one. My son, Matt, was considering entering the military and wanted to intern for a Congressman who had a military background. Ken reached out to Congressman Seth Moulton (MA 6th district) who served in the Marines. He identified the Congressman as the one of the best candidates to help Matt and his career path. While my son was in graduate school at Georgetown, he worked for Congressman Moulton for 2 years and gained invaluable insight and experience into a military life. Seth was a mentor to my son and humbly took him under his wing. Last week, my son, Matt, was awarded his Navy SEAL Trident signifying an 18-month program which culminates in becoming a Navy SEAL. Although my son had many influencers on this career path, it all started with Ken identifying the Congressman and making sure he could properly mentor him. This is what friends do for friends and is just a small part of the many ways Ken has helped others. I'm sure you will receive several stories like these and hope that Ken's lifetime body of work will help you understand Ken's true character.

I have spoken to Ken about his situation numerous times and know that he deeply regrets what he did. He has learned from his mistakes and understands the serious nature of his actions. Ken is a family man first and I do not think that he or society would benefit from a prison sentence. The incredible financial toll this trial has taken on his family combined with the significant emotional stress on him and his family have already been a tremendous burden. The last years have been both a financial and emotional sentence. Ken has learned and suffered and will not be a detriment to society going forward. In fact, I would want Ken as my brother, brother in law, neighbor, business partner, or guardian to my children.

Respectfully,

Thaddeus J Fortin

Howard Silverman


February 14th, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

RE: Kenneth Smukler

Dear Judge DuBois:

I am writing this letter in support of Kenneth Smukler.

I have known Ken for approximately 25 years. We have been relatively close social friends. I have known his family and parents for close to fifty years. Much of our interaction and topics of discussion have surrounded the climate of our country as it relates to political happenings as well as philosophical thoughts on the quality of life.

Ken has a very strong feeling for the well being and love of his family. At one point, I served in a fiduciary capacity as an adviser for his children.

Over many luncheon discussions, we discussed the trouble he was facing in this legal ordeal. Our discussions centered around how he felt about what he has done and fully recognized the outcome of his actions. He has exhibited much remorse because of his actions.

Ken is a very kind and warm person in his feelings towards everyone with whom he comes in contact. This is evidenced by being in each other's company with many of his friends over time. He is always ready to listen and attempt to help in any way. While he and I don't always agree on the correct path to travel, we seem to come out in agreement to find solutions for those in need of understanding.

Personally, I have a great deal of respect for his values. When I had some business issues that needed airing, he was quite instrumental in pointing out the pros and cons of what I needed to do. In retrospect, his advice was quite valuable to me, as the outcome ultimately demonstrated.

At one point, I was medically advised to pursue and enhance my physical activity. Shortly thereafter, a bicycle appeared at my home to aid me in this venture. Ken had taken it upon himself to look into what would be best for me and acted upon it. It was quite touching for me and greatly appreciated.

Your Honor, I truly believe that Ken knows he has done wrong in the eyes of the law, regrets having chosen this path and hopes to be able to move on with his life in a positive manner.

Along those lines, I believe that society would benefit greatly by utilizing the talents and abilities of Kenneth Smukler in other manners than incarceration. His experiences, remorse and wisdom of what he has done could be of value to many people who might need his counsel and advice going forward.

Having devoted much time in my life to offering my experiences and services in the community, I feel there is much to be gained by having someone of Ken's knowledge and experience conveying this to those who could profit from it going forward, much to the benefit of our community.

Respectfully yours,

Howard Silverman


Tracey Specter

February 11, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge Dubois,

I am writing to you about Ken Smukler who is due to be sentenced on March 15.

Ken and I go way back - we have been friends for over 30 years. We have interacted both socially and politically. He has been to our home for social occasions. He and Shelly recently attended a 60th birthday party for my husband. When our respective kids were young, I would see him at local soccer and lacrosse games supporting his daughters. He is a nice person, a devoted father, husband and family man.

I remember that Ken was a partner with Larry Ceisler in a public relations firm before taking his most recent position with Bob Brady. When Ken came into a large inheritance after his dad died, he decided to switch careers to work in politics because he could afford to do so - without having to worry about supporting his family. Since I have known him, Ken has always been interested and involved in politics. I was not surprised when he left his partnership to work for Bob Brady.

Ken loved his job with Bob Brady. He and I spoke and worked with each other with some regularity between 2002 - 2010 when I was Chair of the Republican Committee of Lower Merion and Narberth, and worked in my father-in-law's campaigns. For example, Ken arranged for me to speak with Bob Brady's ward leaders on behalf of my father-in-law in 2010.

I always found Ken to honest and a straight shooter. It was clear to me that Ken loved his job and wanted to do his best for his boss and for his boss' constituency. It was clear to me that Ken was not looking for self-aggrandizement or financial benefits.

I cannot imagine Ken intentionally breaking the law for his own benefit. And, I was surprised when he was indicted. Ken may have made some mistakes when dealing with others in his job, but I do not believe his mistakes warrant jail time, especially when I




February 12, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge DuBois,

I have known Ken Smukler for most of my life - from high school, to college, as young parents and to this day we are close family friends with Ken and Shelly. Ken is a wonderful friend, lovely father, intelligent and compassionate man.

Ken and I met when I was at the Baldwin School with Ken's sister while Ken was at the Haverford School. Ken dated one of my classmates and we spent a good deal of time together. Ken grew up in a nice family where I spent many afternoons working on homework. There were good conversations at the dinner table where Ken exhibited his intelligence and excitement for learning.

Drew and I became close friends with Ken and Shelly when we moved next door in Bala Cynwyd. Our children and the Smukler children were all born when we lived on Oxford Road. We all shared dinner duties – sometimes at their house, and other days, our house, where the parents would work together to feed children, entertain them and get them ready for bed. It was a group effort. I have many memories of Ken with a child or 2 on his lap reading a book and also playing a game to keep everyone happy. Ken was a wonderful father from the start.

The Christmas season wouldn't be the same without "Cookie Day" at Ken and Shelly's house with all of our children still participating well into their 20s. A festive and warm tradition thanks to Ken and Shelly. We have spent every Christmas Eve hosting the Smuklers at our house, singing carols around the piano.

Ken has been a big part of my children's lives. Every baptism, first communion, confirmation, all caught on tape and narrated by Uncle Ken. I am a firm believer that one's success in life can be best judged by the children he or she has raised. Ken is one of the most successful men I know. He has raised three of the finest people in Lucy, Phoebe and Camille. These 3 beautiful young ladies have had tremendous success in academics, music and athletics – all in their own way. Ken has taught his children to do well, but most importantly to do good. Ken's commitment to his family and community has been a rock solid lesson to his daughters, and many more of us.

Ken will be more than missed if he is not part of our community for any moment in time. His leadership, fatherhood, intelligence and compassion are so much a part of our friend group.

Thank you for your consideration,

Babs Camerota

Babs Camerota



February 12, 19087

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge DuBois,

I have known Ken Smukler since 1993 when we became next door neighbors. My wife has been a lifelong friend of Ken's, having been in the same social circles in high school and off to UPenn together. This long history was a great catalyst for Ken and I to become great friends. I feel that I know Ken in multiple roles – neighbor, friend, team mate, business partner, fellow school parent and most importantly family man, husband and father.

We were living next door to the Smuklers on Oxford Road when my 2 children were born as well as all 3 Smukler children, Lucy, Phoebe and Camille.

From that point on my family and the Smuklers partook in multiple family dinners, cookouts and old fashion 1960's style neighborhood play. Ken is an exceptional father and I did my best to learn and keep pace. Ken and I have made countless Daddy trips with the five kids to the playground, the Philadelphia Zoo and the Please Touch Museum. These are some of my favorite memories of young fatherhood and Ken was a huge part of it. As the years past and the kids grew, we continued on through Indian Princesses, figure skating competitions, Agnes Irwin musicals and tennis matched where Ken and I were staples in the stand and on the sidelines.

Through all these years of activities, the one constant was that Ken and I have had countless hours to discuss just about everything. We talked business, politics, sports but mostly about family and kids. In this time, I really got to know Ken. Ken is a man with a real love of people and he has a true sense of decency.

I am most disappointed in the situation that Ken has found himself with these charges. Ken has expressed to me his remorse and deep sadness for the way this has hurt his family and friends. Really the only people hurt in this case.

Ken is a huge part of my life and our community at large, as seen by the many people that took days off of work to be with Ken during his trial. He is an incredible husband and father. I urge you to weigh all the good Ken has spread throughout his life helping so many. I would hate to see him taken away from all of us, especially his kids for even the shortest of time.

Thank you for your consideration of my dear friend,

Drew Camerota



www.ceislermedia.com

1525 Locust Street, Sixth Floor
Philadelphia, PA 19102
215.735.6760 tel
215.735.6758 fax

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

February 6, 2019

Dear Judge DuBois:

I have known Ken Smukler since 1986. Our friendship has been continuous since we met working together on the re-election campaign of Mayor W.Wilson Goode of Philadelphia. Kenny and I have been through a lot together since then – as colleagues, partners, and occasionally on the opposite sides of a political issue. But through everything, we have always been friends and I have genuine affinity for him and his family.

I was present for part of his trial, as well as following the case since it hit the news. I realize he was convicted and facing jail time for his actions. It is a difficult concept for me to fathom – a good friend going to jail – but I realize it could happen. I have spoken to Ken about the future and what happened. He is fully cognizant of what could lie ahead and just wants to move forward without delay. He knows his career as a political consultant is over, but he is looking forward to using his skills in other areas. I stand ready to assist him.

Ken is truly one of the smartest people I know. His wit is legendary and has a wicked sense of humor. Kenny is just a person who people like to be around. When he was my business partner, I would marvel at how he could look at a problem and dissect it in a minute. He has an excellent analytical mind. Unlike many in our types of business, Ken has never been motivated by money. Even in this case, this was not about Ken putting money in his pocket, but rather, as I understood part of the case, it cost him money. As partners, our disputes would be about tactics, never financial. And from all my experience with Ken, that has always been the case. I trust Ken implicitly. If he gave his word, it was always good.

I am not from Philadelphia, but after meeting Ken, his parents became my surrogate family in Philadelphia. My father was an attorney for 60 years in Western Pennsylvania and when he was in town, he loved to get together with Ken's dad, Joe Smukler, because they both approached the law as a profession – one they loved. My mother was named Connie, as Joe's mother is, and my mother thought the world of the Smuklers. Connie Smukler is in a league of her own, and together the Smuklers are leaders of our community. Their dedication and charity are second to none. I know Ken subscribes to the same ethic and whenever he was asked to lend his talents to a philanthropic project, he never said no. Those requests ranged from retaining the Dad Vale Regatta to envisioning the Philadelphia Holocaust Memorial. He inherited that trait from Connie and Joe.

For me, the best thing about Ken Smukler is that he introduced me to my first wife and thus is indirectly responsible for the most important people in my life – my two children. My wife was a prosecutor in the Office of the District Attorney of Philadelphia, as was Ken's girlfriend. We met through them and as

Commerce Building
300 North Second Street, Suite 702
Harrisburg, PA 17101
866.885.4675 tel

Two Gateway Center
603 Stanwix Street, Suite 1679
Pittsburgh, PA 15222
866.603.3674 tel



couples, we continued to socialize throughout the time of my marriage. My ex-wife, who is still one of my best friends, went on to become a Judge on the Court of Common Pleas and now sits on a Pennsylvania Appellate Court.

I have every confidence that Ken can move on from this experience and resume a very productive and meaningful life. Knowing his ability and dedication to helping people and causes, I do not believe incarceration would be an equitable form to pay back society for his crimes. Ken can be a tremendous resource for many organizations that could not normally afford a man of his talents. With a strong-knit family at home and a wonderful mother and siblings, I know that he will strive going forward to make up for this unfortunate period and want people to be proud of the rest of his life.

You get to know a lot about a man who has been in the professional trenches with you. You know a lot about a friend who had the perspective to introduce you to the mother of your children. Until this episode, Ken has never disappointed me. I know if given a second chance, he has the will and resources to reimburse society many times over any harm for which he will stand before you.

Sincerely,

Larry Ceisler



**MICHAEL E. SCULLIN**

February 20, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re:    Kenneth L. Smukler

Dear Judge Dubois:

I am a lawyer with McElroy, Deutsch, Mulvaney and Carpenter, LLP, and the Honorary Consul of France in Philadelphia. Kenneth Smukler has been a colleague and friend since approximately 1982, when we were students at the Dickinson School of Law. I deeply value the friendship I have enjoyed with Ken and his wife and family over these decades, and I greatly respect his talent, imagination and determination.

I am well aware of the predicament in which Ken finds himself. I have discussed with him the situation he is facing, and I believe I can help him adjust to whatever consequences develop in the near future and beyond, and provide whatever support is needed.

One of the principal things I can say about Ken is that he brings joy into the lives of his family, friends and colleagues. He is a warm and caring person who exhibits a deep love of life and provides for the wellbeing of his lovely wife and three daughters. He has also provided support to me as I have encountered physical, emotional and career challenges throughout my life. Recently he and his wife were present with my own family and closest friends to celebrate a significant birthday. He is a dedicated and true friend.

I know that Ken knows that he engaged in conduct adjudged to be improper and illegal, that he regrets his conduct and will be informed about this as he goes through the rest of his life.

On balance, Ken adds a great deal to society. We would all be worse off if Ken were taken away from us and sentenced to prison: those he has served, those with whom he has worked, the public and his wife, daughters, mother, siblings and relatives.

I hope that your Honor will take these points under consideration during your deliberations on sentencing.

Respectfully yours,

Michael E. Scullin
mescullin@verizon.net



# Kevin J. Small

January 26, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Your Honor:

I am writing in support of Ken Smukler. I have had the pleasure of knowing Ken as a friend for nearly thirty years. I first met Kenny through a mutual friend in the fall of nineteen ninety-one. Initially bonding over our shared love of Philly sports, Ken quickly became more . . . a big brother . . . a key mentor. He helped me draft my first cover letter as I applied for basketball coaching opportunities, inspired me as I practiced interviewing with him, was a confidant as I considered graduate programs, and celebrated with me at my marriage in 1998.

I have seen firsthand how Ken interacts with a wide array of people, and have always been incredibly impressed with his ability to inspire the best in others, as well as by his obvious integrity and character. Ken is a unique example of how focus on others, coupled with passion and genuine commitment, can lead to a meaningful life. A dynamic, affable and highly intelligent man, Ken has a rare gift for engendering instant positive energy and joy. He has always struck me as a confident, fair and charismatic leader, but also a man of deep principles, honesty and high character. He meets and relates easily, openly and comfortably with people of all backgrounds – a characteristic few share with the same enthusiasm. This ability to put people immediately at ease, while making them feel as if they are truly the center of his focus, is both genuine but also incredibly rare in my experience.

But perhaps the most meaningful part of my relationship with Kenny is the fact that I owe my children to his tireless efforts. I have a very clear recollection of having lunch with Ken and sharing news that my wife and I were considering adopting. We had recently deposited with an adoption agency, but had been told we would have a twenty-four month wait. During lunch, Kenny got to work on our behalf. He connected us with a cousin who worked in the Ministry of Education in Russia, and because of his many efforts, we feel Kenny is singularly responsible for why my wife and I are the proud and incredibly fortunate parents to Sasha (adopted at eight months, now seventeen and a junior in high school) and Karina (adopted at eighteen months, now eleven and in fifth grade). It would be impossible to put into words the gratitude my wife and I have for Ken. And it is nearly impossible to put into words our utmost respect for the quality of man that Kenny is. Suffice to say, I hope someday my own son is half the person that


KILCULLEN & COMPANY

February 19, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re:     Kenneth Smukler
        Sentencing Date: March 13, 2019 at 12:45 pm

Dear Judge DuBois:

It is my pleasure to write to you on the behalf of my friend, Ken Smukler. Ken and I have been friends for more than twenty (20) years. We raised our daughters together and enjoyed many special events with our families. With humor and spirit, Ken participated in many different activities with his daughters. One in particular was a father-daughter group through the YMCA. We camped out with our daughters quarterly. Despite the fact that Ken was not a camper, he was one of the fathers who showed the most enthusiasm for the group during our eight (8) years of participation. I watched him direct plays with the girls, organize dinners, build campfires, rig stereo systems; all to bond with his daughters in an organic way, create memorable experiences for everyone and foster life long friendships among both the fathers and the daughters.

As a matter of fact many of us are still friends today and get together on a regular basis. Ken plays a major role in these friendships by planning outings and dinners, and attending all events with enthusiasm and humor. He created nicknames for all of the fathers in our group, many of which have stuck. Ken also had some nicknames for the girls which were great ice breakers and allowed him to forge friendships with many of the kids.

I am familiar with the campaign finance violations in which Ken was convicted and know that he is remorseful about the circumstances of the case and would like to move forward and protect his family from further harm. It is my understanding that you will sentence Ken, and I ask that you show leniency toward Ken because of his past, present and future contributions to his family and friends.

Thank you for all of your consideration.

Very truly yours,

Brian Kilcullen

WESTLAKES
1235 WESTLAKES DRIVE
SUITE 225
BERWYN, PA 19312

T 484.598.2100
F 484.598.2101
WWW.EXECUTIVESEARCHER.COM
KILCULLENCO@EXECUTIVESEARCHER.COM

Nicholas A. Vaganos, M.D., F.A.C.C.
Timothy J. Boyek, M.D., F.A.C.C., F.S.C.A.I.
Jeffrey M. Wahl, M.D., F.A.C.C.
W. Clay Warnick, M.D., F.A.C.C.
Donna M. Reed, D.O., F.A.C.C.
Joseph G. Lewis, M.D., F.A.C.C., F.S.C.A.I.
Rita A. Falcone, M.D., F.A.C.C.
Richard C. Hui, M.D., PH.D., F.A.C.C.
Gregg L. Neithardt, M.D., F.A.C.C.



Raghuram G. Mallya, M.D., F.A.C.C.
Christopher L. Baldi, D.O., F.A.C.C.
Sharayne D. Mark, M.D.
Kurt J. Schillinger, M.D., Ph.D.

Gabrielle Damasco, M.S.N., C.R.N.P.
Kristy Panichelli, M.S.N., C.R.N.P.
Jane O'Neill, M.S.N., C.R.N.P.
Christine Guliday, M.S.N., C.R.N.P.

CHESTER COUNTY CARDIOLOGY ASSOCIATES DIVISION

2/8/19

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Ken Smukler

Dear Judge DuBois,

I have known Ken Smukler for twenty years. We met when our oldest daughters were in same Indian Princess tribe, a YMCA sponsored activity that involves fathers and their daughters. We became close friends and our daughters became close friends through the many tribal activities including longhouses (what the Princesses call camp-outs), ski trips, swim parties, etc. From the beginning, Ken became the tribal leader, emphasizing the importance of our young daughters bonding with their fathers. Ken was the kind of person who just brought everyone together. Because of Ken, there are a group of about 20 fathers and their daughters who have become life long friends.

Ken has been a great father to his three daughters. I remember an Indian Princess trip where we went skiing in the Poconos (actually there were a bunch of them). On one trip, I remember that everything was a bit disorganized, but Ken had arranged ski lessons for his daughters. I remember thinking, wow, he's a good dad. I even called my wife and told her the same.

Some years later, my family and the Smukler's went on a spring break trip to St. Barts. One doesn't usually think of this as a place to take children. Well, Ken had arranged for our two families to have two tennis courts for ourselves at a small club every day. His three girls and my four children had a great time. If you ask most of them today, they will tell you it was the best family vacation they ever had.

Ken instilled his love of tennis to his youngest daughter, Camille, who became a varsity tennis player in college. Having played tennis my whole life, I've seen a lot of "bad" tennis parents at matches. It's easy to get emotional as a parent, but Ken always kept his cool and gave gentle encouragement. It's tough to keep your emotions inside, but I was impressed with the way he did it.

Ken's family was very involved at Penn State. Several years ago, my wife and I went to the Sundance Film Festival with Ken and Shelly. One of the films we were going to see was a documentary about Penn State and the Sandusky child abuse fiasco. It brought out a side of Ken I had never seen before. He was an emotional wreck for about a day before the film. He was so worried about how the film would portray the university and Joe Paterno. I had never seen this side of him before. I was always impressed with how he could stay calm in the face of multiple pressures and uncertainties he faced as a political consultant. After the film, during the question and answer session, he stood up and gave a brief impassioned speech commending the filmmaker for making a very fair and impartial presentation of how the events had affected the Penn State community. It was fantastic!

As a physician, I spend my days in a completely different world than a political consultant. So it would be naïve for me to say that I fully understand the events that lead to his indictment and conviction. But I do understand that there have to be rules that govern a political system and clearly Ken deviated from those guidelines in these two cases. It's probably easy to do that in a system that's very goal-directed. In speaking with Ken, he understands that he went "over the line" in these cases and regrets that he did it, regrets the havoc it caused in political circles, and regrets the stress it caused his family.

Ken and his family have suffered tremendously the last two years. There has been financial strain and shame in the community. Honestly, I can't even imagine how my wife and I would deal with something like this. But Ken and Shelly are strong and have unwavering support from their daughters, not to mention their many close friends. In the end, I'm sure they will recover and go on with their lives.

Honestly, I don't think anyone or our society benefits from sending him to prison. As far as I'm concerned, he's suffered enough and I'm confident he will take a different approach in the future. As far as society is concerned, it seems unlikely that sending him to prison will change anything that goes on in our political system. That will require a much bigger commitment at multiple levels.

Ken is a true friend, a great father, a wonderful husband, and in many ways just someone who has made me a better person. I thank you for taking this into consideration.

Sincerely,

Jeffrey Wahl, MD

April 10, 2019

Honorable Jan E. DuBois
U.S. District Judge
U.S. Courthouse
601 Market St.
Philadelphia, PA 19106

Dear Judge DuBois,

I am writing to you today in support of Ken Smukler, a man I have known, liked and admired since I met him in 1995.

I'm very sad and disappointed that Ken allowed himself to get into a situation in which he broke the law. I have talked to Ken numerous times since his trial and conviction and I absolutely believe he is ashamed and distressed at the harm he caused his family and himself.

Ken is one of the most creative people I have ever met. He has come up with endless unique ideas for businesses as well as social mission organizations. I give Ken a lot of credit for his tireless and essential work on the Philadelphia Traditions project, which saved institutions like the Philadelphia Regatta from disappearing. I am convinced that Ken still has a great potential to be productive and to contribute with the rest of his life. I have seen his rare talent for thinking of ways to solve problems and the energy and focus to follow through with those ideas.

Family is the center of Ken's life. His daughters, his wife and his immediate family are his rock. In conversations I have had with Ken since the 90's, which easily number over a thousand, Ken would talk about something happening with his family. He was always so supportive and proud of what his daughters were doing while in school or after graduation. I know his loves his wife and kids more than life itself.

I know Ken has been found guilty of very serious crimes. I'm not sure how much mercy the law will allow in Ken's case. But if mercy is an option, I respectfully ask you for it. Please allow Ken put this terrible mistake behind him and spend the rest of his life using his talent and personality to do good somewhere.

Sincerely,

Chris Lapetina



Kevin Morgan


April 1, 2019
The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: Ken Smukler

Your Honor:

I am writing to you in support of my very dear friend Ken Smukler, with whom I have been friends since the second grade and consider to be family.

As my lifelong friend, I can unequivocally state that I believe he is an earnest, sincere, honest, decent, generous friend and father, who loves his wife and three daughters very much. I've witnessed them grow up into exceptional young women, who are altruistic and care deeply about the sort of world we share. Many of their attributes come directly from being raised by Ken.

While I was involved in the issues that surround Ken's legal matter, at no time have I ever felt that Ken was anything other than forthright and honest in his communication with me.

I know him to be an honorable and good man and wanted to share that with you.

Respectfully,

Kevin Morgan

JThe Honerable Jan E Dubois

United States District Judge

United States Courthouse

601 Market St

Philadelphia, PA 19106


Dear Judge Dubois;

   I have had the pleasure of knowing Ken for almost 25 years, since are then nursery schooll first born children were in the same class at Gladwyne Montessori.  We have vacatioined together, we have celebrated many Chrisitmas Eves  as families, and shared a common interest in helping Soviet Jews first leave the Soviet Union and then assimilate in the United States.


Ken is a caring passionate man.  He loves his wife and his children.  And he always delighted in the accomplishments of his children, from the tennis court, to the dramatic stage.   He is a great husband and father who was always there for  his family in times of any problem, major and minor.


Ken is a naturally funny entertaining guy, and that can be misread as insincere.  It is who he is. Part of his DNA and its is true on Christmas Eve or any other day of the year.   But under that gregarious exterior, he is a sensitive caring man  who would do anything to help a friend or a family member in need.


 Certainy his long time support of Soviet Jewery demonstrates this. He and his family have changed many lives for the better.  And I know he will continue to make a difference in the future.


Sincerely,

Rhys Williams

Honorable Judge DuBois
US District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re: Kenneth Smukler

Dear Judge DuBois,

I write to you on behalf of Kenneth Smukler.

I.     Relationship
      a. Friend
      b. 22 Years
      c. Ken is like an uncle to me. His three daughters are my closest friends.

II. General Statement of Support
      a. Yes, I understand that Ken has been convicted of various counts of political campaign finance violations.
      b. No. I have not spoken with him about this case.
      c. The only help I can give to Ken and his family is care and support during this time.

III. Statement on Character
      a. Ken is a supportive and loving father to his three daughters: Lucy, Phoebe, and Camille Smukler. Each of his daughters' character and their accomplishments are testaments to Ken as a father and as a person. He has provided, cared, and inspired his children.
      b. Ken is creative, smart, compassionate, generous, open minded, diplomatic, supportive, and loyal. I know that Ken's friends constantly feel supported and encouraged by him. He is present at all important and unimportant occasions in so many people's lives including my own.
      c. Ken, his wife Shelly, and their three daughters and my mother, father, and sister are like a family. We have grown up together. Ken has supported my sister and I throughout our lives whether that was coming to see us participate in sporting events or perform in shows on countless occasions as kids or helping us navigate our professional industries now that we are beginning our careers. Ken has also been an incredibly loyal and kind friend to both of my parents for the past 22 years. We spend Christmas, birthdays, and summer weekends together and my memories with the Smuklers are the fondest that I have.
      My favorite thing about Ken is that he can speak to young people in such a way that they feel as though they have a place at the table. He wants to hear my ideas and talk about what is going on in the world. There is not a topic I can think of that I would not feel comfortable talking about with Ken. He is a dynamic contributor to the larger conversation.

IV. Conclusion:
      a. Ken is an incredibly productive member of society who understands his wrongdoings. He is a very well educated individual who can really make very positive change in this world. I

have witnessed and felt his dedication and love to his family because he treats my family the very same way.

b. To put Ken Smukler in prison would do a disservice to many communities. He is a respected, positive contributor to our society. He has and will continue to make a difference in various spaces within society whether that is within the arts, politics, or education. His wife, his daughters, his mother and extended family need him as he is an integral piece of their family tree.

Respectfully yours,

Megan Kilcullen



31 January 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE: Kenneth Smukler

Your Honor:

For more than twenty years, the Smuklers have lived three
houses down from us. Our families shared camping, beach
time and local sledding. Ken has always been a kind,
engaging, compassionate father and neighbor.

I attended Ken's trial and understand the situation.

Professionally, Ken Smukler is a loyal, bona fide American
who courageously battles for the common man. Ken's work
is truly patriotic.

While my wife battled cancer, Ken was a steadfast friend
and an infinite source of resolve for my family and me. I
truly cherish Ken Smukler, my friend.

As a Montgomery County PA citizen, I respectfully beseech
you, Judge DuBois, to issue the minimum sentence to Ken.

Society is better served and the United States of America
is elevated with Ken Smukler in the community.

Thank you for your consideration.

Sincerely,

Kevin S. Christine

Lester E. Hollis


The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge DuBois —

My name is Les Hollis, I have spent over 25 years in the investment banking industry, and I have had the pleasure of working with Mr. Ken Smukler for the last three years. We were introduced in 2016 by a personal friend of Ken's who ten years ago invested in one of my companies. He mentioned that one of his closest friends was someone I should get to know as I was considering doing business in the Philadelphia area. Ken and I went on to work on a number of projects over the last three years and I now consider Ken to be more than just a business partner – he is a close friend. We have spent a lot of time together over the last three years: on planes, in hotels and on the road all over Pennsylvania and a few other states, so I wanted to share with you my personal feelings toward Ken as you consider his sentence.

I followed his trial and am acutely aware of the charges he was found guilty of. We have spoken many times since his trial ended and I have mentioned to him that I would love to help him in any way I can, both professionally and personally.

While I don't know much about the specific crimes he was convicted of I can tell you that he has conducted himself with the highest level of integrity in all of our many dealings. He is one of the smartest people I have ever met and I feel that he has incredible business instincts which have allowed him to provide important guidance to many people during his career.

I have observed Ken to be a dedicated family man. More often than not, over dinners or during flights, Ken would talk admiringly about his daughters. He would explain how happy he was about their success academically, giving back through academia or even on the tennis court. Ken

frequently traveled all over the country to watch his daughters play tennis or just to have dinner with them.

I know for a fact that Ken regrets the actions that he has taken to put him in the position he is in and he is already on the path to figuring out what to do with his life after this sentencing. As Ken is clearly not a threat to the community, I would hope that a sentence of probation could be applied to his convictions so that he is not forced to serve time in a prison – an outcome which would only make it more difficult for Ken to be a constructive part of the community going forward.

Sincerely,

Les Hollis
312-415-4099



KISTLER TIFFANY
ADVISORS

March 1, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

<u>Personal & Confidential</u>

Dear Judge DuBois,

My wife Jen and I have known Ken Smukler for over 20 years. We became friends with Ken and Shelly through our daughters who have been friends throughout their school years. Over that time, our families gathered on many occasions to celebrate birthdays, graduations and life events.

Ken is a sincere, generous and caring father, husband and friend. Ken enjoys sharing updates about how Phoebe, Camille and Lucey are doing and always asks about our family.

We cannot think of a better friend to have and certainly hope our feelings are helpful to you.

Sincerely,

Andy Reder                              Jen Reder

Investment advisory services offered through Kistler-Tiffany Advisors, an SEC Registered Investment
Adviser. Certain representatives of Kistler-Tiffany Advisors are also Registered Representatives offering
securities through APW Capital, Inc., a Member FINRA/SIPC, located at 100 Enterprise Drive, Suite 504,
Rockaway, NJ 07866, 800-637-3211. Kistler-Tiffany Advisors and APW Capital, Inc. are not affiliated.

610.722.3300
www.ktadv.com

200 Berwyn Park | 920 Cassatt Road | Suite 205 | Berwyn | PA | 19312-1178



Maura T. Dougherty

February 5, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

**RE: KENNETH L. SMUKLER**

Dear Judge DuBois,

I have known Ken Smukler as a colleague and friend for nearly 20 years. When we were introduced by a mutual friend in 2000, I was in the early stages of my career in politics. Ken was a well-known campaign aide and consultant, already successful in the industry in which I hoped to chart a course. From moment one, he was generous with his time, knowledge and contacts – despite the fact that there was little I could do to repay him. He became a mentor to me and has remained one as I made my way in a competitive, often cutthroat business. Over the years, he has become a trusted, beloved friend as well.

When I was considering starting my own business twelve years ago, no one was more supportive than Ken or more honest about the possible pitfalls. Despite the fact that my firm would technically be a competitor to his, he spent a great deal of time working through the details with me. His advice was invaluable in figuring out whether and how to proceed. As the business got off the ground and started to have some success, no one rooted harder or was happier for me than Ken.

Ken Smukler is one of the most loyal people I know. It may not sound extraordinary, but he has maintained friendships in politics for decades – a rare feat. He recognizes the humanity in those on the other side of the aisle, and keeps the partisan fighting in perspective. The combativeness he might exhibit in a campaign setting never shows itself in his interpersonal dealings. He is deeply devoted to the people he loves, forgiving of their mistakes and shortcomings, and always willing to lend a hand to the causes his friends care about.

Ken's love for his family and the joy and pride he takes in his three daughters is a theme of any conversation with him. The thought of being away from his wife, daughters, mother and other family members for a lengthy period of time is devastating to him. I understand the seriousness of the violations Ken has been convicted of. I also know how much good he can – and will – continue to do in the world, and that an extended prison sentence will deprive his friends, family, and community of the presence of a deeply good man.

Your Honor, I appreciate the opportunity to share these thoughts as you prepare for sentencing, and I thank you for your time.

Respectfully yours,

Maura T. Dougherty

James N. Mordy



February 4, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re: Kenneth Smukler

Your Honor,

Ken Smukler has been a close friend for the past fifteen years. As you are aware, he is scheduled for sentencing on March 13, 2019 in connection with his federal jury trial where he was found guilty of campaign finance law violations.

I first met Ken when our daughters attended the Gladwyne Montessori School together. Over the subsequent years, our families have vacationed together, we have enjoyed weekend camping trips with our daughters, and we all skated together at the same local skating club. Our youngest daughters attended the same summer camp in Maine and are now currently in the same class at Amherst College together. My wife and I consider Ken, and his wife Shelly, to be among our very best friends in the Philadelphia area, where we have lived for over thirty years. We see them frequently for dinners or movie nights.

Ken has always impressed me as a great father to his daughters. He didn't just make the time to attend their athletic and school events, but he invested himself into their emotional support as well. It is obvious that there is a lot of love in the Smukler family. He also cares deeply for his large circle of friends. Before one mutual friend recently lost a battle with cancer, Ken organized a number of visits and other efforts on his behalf. This was during his own legal trial last Fall. It is a measure of Ken's strong character that he was able to look past his own personal stress and troubles to lift the spirits of a sick friend. He was an inspiration to all of us.

Ken has also been generous with his time and helpful to our family. He has taken a sincere interest in our daughters' well-being and has helped support a number of charitable causes that we have been involved in.

Ken is a kind person with a huge heart. He is a creative, energetic and talented individual. One constant over his career has been his ability to turn ideas into real accomplishments that have benefitted Philadelphia. I believe he is appropriately humbled by the experience of this trial and has learned that

he made errors of judgement. He has managed to hold his head high despite great personal embarrassment and hardship to his family from the publicity and costs of the trial. He will not be able to erase these stains no matter the outcome of his sentencing, and I do not believe he will ever show similar lapses of judgement in the future. In my opinion, the minimal societal benefits of a lengthy prison sentence would actually be far outweighed by the costs, as Ken can still do much good for our community and is certainly still needed by his family for guidance and emotional support.

Thank you for your consideration my support for Ken as you contemplate your difficult decision.

Respectfully yours,

James N. Mordy

February 3, 2019



The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE: Ken Smukler

Dear Judge DuBois,

I wish to convey my support for my dear friend Ken Smukler who is due for a sentencing on March 13, 2018. I have known Ken very closely on a social basis for over 20 years. Our daughters grew up together and participated in many neighborhood activities such as township sports and YMCA camps. He is a very caring and devoted husband and father who is adored by his family and all who know him in the community.

He has a reputation for having high ethical standards, an honest and upstanding citizen, and I have never witnessed otherwise in all of the time that I have known him. In fact, I know of no one who doesn't respect him on both a personal and professional level. Of course, it came to me with great surprise to have learned of the political campaign issue that he was ultimately found to be guilty. He has talked to me about it and I know he is deeply sorry for what he has done. I have no doubt that he truly regrets his actions and that nothing like this will ever happen again.

This legal situation has taken a great emotional and financial toll on him and his family. I understand that they have their home of over 25 years up for sale to help pay for the legal bills. He is a man of strong character and will do what needs to be done as a dedicated family man to take the best care of his wife and daughters during and after this moment of great trouble in his life. That being said, it would be of tremendous added strain on the family should he be sent to prison for this one legal transgression. I don't see how society would benefit in any way in having Ken serve time in prison. I hope you will find leniency at the time of sentencing.

Respectively yours,

Carl Regillo, MD

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

February 6, 2019

Your Honor,

I have known and respected my dear friend, Ken Smukler for over 20 years and am writing in total support of him. We first met as Philadelphians through mutual friends in journalism and politics. I have extremely high regard for Ken and his wonderful family. He has always been a smart, conscientious, caring, grounded and clear-thinking person to me and our mutual friends; exhibiting consistently great integrity.

As a journalist for most of my early career, I have sought out Ken's advice, valuable perspective and guidance at numerous times on numerous topics. We've also laughed together; have shared a mutual appreciation of what's important: family, good health, hard work and doing what's right. Now, as a healthcare communications professional, I still look to Ken for being solid, smart, funny, caring, and true blue. I have also come to know his lovely, articulate and elegant mother and can truly call her my friend as well. When Ken and I have spoken through the years about our respective families, it's clear he cherishes his and has always supported me in doing the same.

Given Ken's character and the fact that he is of no danger or threat to society or businesses at all whatsoever, it would be of much greater benefit to society, tax payers, his family, friends and the City of Philadelphia as a whole, if he could move on with this next chapter of his life, be spared time in prison, and be the sterling example to our community – that we so desperately need and know he will be – of graciously handling the challenges in life, learning and growing from them, and exhibiting resilience and strength gained in the end.

Thank you,

Sincerely,

Cathy Moss

David and Marlyn Silvera


February 11, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106
Via Brian J. McMonagle, McMonagle, Perri et al.


Dear Judge DuBois –

I am writing to offer you a perspective on Ken Smukler who I have known for over twenty years and for whom I have the utmost respect. Ken and I have known each other since the late 1990's when we met as young fathers who's children overlapped in pre-school. We quickly became friends as we started our families in the Philadelphia suburbs and we have enjoyed countless dinners, picnics, weekends and trips together. My wife Marlyn and I count Ken and Shelly as among our closest friends and our children have all shared many happy memories together.

Ken exemplifies the definition of the Yiddish term mensch: "a good person", a person of honor, integrity and rectitude. In the more than twenty years that Ken has been my friend, he has never ceased to impress me with his devotion to his family, friends and community. Ken has consistently demonstrated a generosity of spirit that transcends material support and exhibited a genuine caring for those in his orbit. He has supported me through various ups and downs in my career and personal life, just as I know he has provided good counsel to many others. Ken has been a leader in building a community of fathers and daughters through the Indian Princess organization (now known as the "Adventure" Princesses). Ken was a leader in bringing together a broad network of fathers and daughters to share camping weekends and community-based activities through the YMCA at locations throughout the region. This group of fathers and daughters developed a bond that has thrived well beyond our daughters childhood and evolved into a community of close friends who have supported each other through good times and bad. Ken Smukler is the group's heart and soul; frequently sending out "smoke signals" to others to celebrate good times and to rally support during difficult ones.

Ken's sense of community is certainly not limited to his leadership of our father / daughter group. He is a tireless advocate for all manner of businesses, activities and events in the Philadelphia area. His selfless support of the Philadelphia Pro Cycling Races, the Dad Vail Regatta and countless other local and regional organizations has provided pleasure and regional spirit to countless people. Ken's advocacy for regional businesses and professionals extends far beyond his roles in politics and speak volumes about his sense of community and his generous spirit.

I have witnessed first-hand the pain and suffering that Ken and his family have endured as a result of his trial. In the many arduous months since Ken confided in me about this ordeal, he has remained a stalwart source of strength for his family as they try to move forward; exhibiting the same positive attitude that has made him such a good friend and valuable member of the community. He has now applied his characteristic energy and resolve towards rebuilding his life and nursing his family back to "normal". I believe that Ken and his family have already paid a severe price for his actions. Ken continues to work hard on behalf of our community and now deserves the most lenient penalty that the court is able to sentence.

Thank you for your consideration of this letter. Please let me know if I can be of any further assistance.

Sincerely,

David Silvera

April X, 2019

The Honorable Jan E. DuBois
United States District Judge
United States Courthouse
601 Market Street
Philadelphia, PA 19106

Dear Judge DuBois,

I am writing to you in support of one of my closest and dearest friends, Ken Smuckler.

My name is Michael Jacobs, and I have known Ken for over 45 years. We met and became friends in the second grade. To say that I know him well is an understatement. Our friendship has continued through the decades without interruption.

We attended the same schools through high school, stayed close through college and, following that, supported each other as we started our careers, marriages, and families. Ken is like family: he is a brother to me and my siblings, a child to my parents, an in-law to my wife, and an uncle to my children. Through the years, I've come to know Ken as one of the most honest and trustworthy men around. Needless to say, it is difficult to see my best friend, a man whom I greatly admire, in a legal predicament.

I fully understand the severity of Ken's legal situation and have seen the trial's impact on him. When we met up recently, he did not look or act like the Ken that I have known all these years. He expressed great regret over what has transpired, and he made it clear that he is ready to accept his sentence and make amends for his actions. I am standing by my friend to provide emotional support, and going forward I will do anything asked of me to help Ken in any way possible.

Obviously, I think the world of Ken, and, even if pressed, I could not think of anything bad to say about him. I still believe that he does not have a bad or dishonest bone in his body. He's simply not built that way, and that goes for his entire family, including his parents and siblings. They are a very philanthropic group, with a keen focus on helping others. That family culture was passed on to Ken, and Ken has been careful to see that it will be continued by his children.

I hope that Your Honor can see his way to sentence Ken to probation. My simplified way of looking at things is that bad people go to prison, and Ken is not a bad person. I am thinking that he may have worked for bad people, which put him in a difficult situation and led to poor decisions on his part. Ken did not benefit financially from his crimes, and the trial and conviction have irreparably damaged his business reputation. I understand the gravity of his convictions, but placing Ken is prison would serve no benefit to society. In fact, a prison sentence would severely limit Ken's ability to help others. Please allow him to quickly begin his rehabilitation by remaining a part the community to which he has dedicated himself for decades.

Thank you for your time.

# EXHIBIT "B"

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Case No. 2:17-cr-00563-JD |
| | § | |
| KENNETH SMUKLER, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DECLARATION OF SCOTT E. THOMAS

I, Scott E. Thomas, hereby declare, under penalty of perjury, as follows:

### I.     BACKGROUND AND EXPERIENCE

1.     I am a citizen and resident of the District of Columbia and an attorney licensed to practice law under the laws of the District of Columbia. I am a partner in the Washington, D.C. office of Blank Rome LLP, where I am the leader of the Policy and Political Law Practice Group.

2.     I am a graduate of Stanford University where I received my B.A. in 1974 and the Georgetown University Law Center where I received my J.D. in 1977.

3.     I began my legal career as a staff attorney with the Federal Election Commission ("FEC") in 1977. In 1980, I became an FEC Assistant General Counsel for Enforcement, and in 1983, I began serving as the Executive Assistant to then-FEC Commissioner Tom Harris.

4.     In 1986, I was appointed as a Commissioner of the FEC by President Ronald Reagan. I was reappointed by President George H.W. Bush in 1991, and by President William Clinton in 1997. I served as a Commissioner on the FEC for almost 20 years, from 1986 through early 2006.

5.     I served as Chairman of the FEC four times: in 1987, 1993, 1999, and 2005.

6.     I have served on the American Bar Association Standing Committee on Election Law as well as the Elections Committee of the ABA's Section on Administrative Law and Regulatory Practice.

7.     I have written, taught, and lectured in the field of campaign finance law. I have published articles in that field in the *Stanford Journal of Law and Policy*, the Washington College of Law *Administrative Law Review,* and the *Catholic University Law Review.* I have given invited lectures at the Georgetown University Law Center and the George Washington University Graduate Program of Political Management in the field of election law.

## II.   OPINION

### A.   Issues and Materials Considered

8.   At the request of the attorneys for Kenneth Smukler, I was asked to review the allegations in the Superseding Indictment relating to the 2014 Campaign of Marjorie Margolies ("Marjorie 2014")—set forth in Counts VI-XI. I understand that there are separate charges relating to the 2012 Campaign of Robert Brady (Counts I-V), but I was not asked to review those charges for the purposes of my opinion.

9.   Specifically, I was asked to provide an opinion on whether payments made to Marjorie 2014 by Mr. Smukler's companies, InfoVoter Technologies and Black and Blue Media, were required to be labeled as "refunds" or "rebates" on the FEC reports prepared by the Treasurer of Marjorie 2014, as well as to provide some background on whether return payments from vendors generally would be considered campaign contributions by the FEC. These payments included: (1) a May 5, 2014 payment of $78,750 from Black and Blue Media; (2) a July 14, 2014 payment of $40,000 from Black and Blue Media; and (3) a July 14, 2014 payment of $110,000 from InfoVoter Technologies (altogether "the payments").

10.   I was also asked to examine whether there had previously been any FEC enforcement actions in which the FEC had found that monies returned to a campaign from a campaign vendor, either before or after an election was over, were campaign contributions.

11.   As part of my review, I was asked to assume as true all the relevant facts set forth in the Superseding Indictment. I was also directed by counsel for Mr. Smukler to assume for purposes of my opinion that by the time the primary campaign ended on May 20, 2014, Mr. Smukler's companies had spent all of the monies they had received from Marjorie 2014 on primary-related expenses.

12.   In connection with my review, I conducted research on the reported cases, FEC agency enforcement actions, advisory opinions, and other guidance from the FEC. I also relied upon my own experience as a Commissioner through 2006 as well as a practitioner in this area for over 40 years.

### B.   Payments from a Vendor to the Campaign Must Be Reported on an FEC Report as a Refund or Rebate

13.   Based upon my knowledge, training, and experience, in addition to the research that I conducted, it is my opinion that the facts as I assumed them to be do not make out a violation of the federal election law as it relates to the manner in which these three payments were characterized on the FEC reports as "refunds."

14.   Specifically, it is my opinion that these three payments by Mr. Smukler's companies were appropriately characterized as "refunds" on the two FEC reports specifically referencing them. *See* Ex. A-1.[1] It is also my opinion that these payments were appropriately not characterized as "contributions" on the FEC reports.

---

[1] Exhibit A-1 is a combined exhibit comprised of truncated versions of Marjorie 2014's FEC reports from both July 2014 and October 2014.

15.     Campaign committees are required to submit quarterly campaign finance reports on FEC Form 3, and Form 3 instructs campaigns to report "Offsets to Operating Expenditures (Refunds, Rebates, etc.)" on Line 14 separately from "Contributions" on Line 11. Ex. A-2 at 3 (Blank FEC Form 3). The FEC explains, on a page of its website titled "How to Report," that "vendor refunds and rebates are considered offsets to operating expenditures" to be reported "on Form 3, Line 14," and "are not considered contributions." Ex. A-3 (FEC, "How to Report," available at https://www.fec.gov/help-candidates-and-committees/filing-reports/offsets-operating-expenditures/).

16.     When itemizing such vendor repayments, campaign committees are specifically instructed to "include 'refund,' 'rebate,' etc." "[i]n the description field." Ex. A-3. Because both Black and Blue Media and InfoVoter Technologies had received disbursements from Marjorie 2014, and the repayments from these companies were equal to or less than the monies they had received (accounting for the return of an initial $18,000 overpayment), it is my opinion that the Campaign Treasurer would have been contravening the FEC's express instruction and guidance had she reported such payments as anything other than "refunds."

## C.     Prior FEC Actions Examining Payments from Campaign Vendors

17.     Based upon my knowledge, training, and experience, in addition to the research that I conducted, I am not aware of any enforcement action in which the FEC has characterized the return of monies from a campaign vendor as a campaign contribution under the Federal Election Act. This is true regardless of whether the vendor had already spent the money it received from the campaign.

18.     Based upon my knowledge, training, and experience, in addition to the research that I conducted, I am also not aware of any instance in which the FEC referred or reported to the U.S. Department of Justice for possible criminal enforcement a matter involving the return of monies from a campaign vendor to a campaign.

19.     Congress gave the FEC the responsibility of administering and formulating policy with respect to the Federal Election Campaign Act of 1971, as amended (FECA). 52 U.S.C. § 30106(b)(1). The FECA provisions cover detailed accounting, recordkeeping, and reporting requirements as well as a comprehensive set of contribution limits and prohibitions. The FEC has authority to develop prescribed forms for the reporting requirements, to make rules, to report apparent violations to the appropriate law enforcement authorities, and, if it finds probable cause to believe a knowing and willful violation has occurred, to refer the matter to the Attorney General of the United States. 52 U.S.C. §§ 30107(a)(8), (9); 30109(a)(5)(C).

20.     The FEC generally issues legal guidance in several different ways. First, it issues regulations through the normal rulemaking process (regulations covering recordkeeping, accounting, and reporting found at 11 C.F.R. Parts 102, 103, and 104). Second, it issues advisory opinions, and a person who relies in good faith upon on an advisory opinion shall not be subject to any sanction provided by FECA. *See* 52 U.S.C. § 30108. Third, it makes public its resolution of enforcement cases (Matters Under Review or MURs) with the underlying documents that describe the issue causing the enforcement action and  the legal reasoning for the decision. Fourth, the FEC issues informal guidance on how to apply the law through "Campaign

Guide" publications and published policy statements, interpretive rules, and other material (see FEC website at https://www.fec.gov/help-candidates-and-committees/guides/ and https://transition.fec.gov/law/policy.shtml).

21. I am not aware of any circumstance where the FEC has issued an advisory opinion, a MUR decision, or other legal guidance stating that a return of funds from a campaign vendor must be reported as a campaign contribution merely by virtue of the fact that the vendor had already spent the money or had already performed services for the campaign. In fact, the guidance issued by the FEC as well as prior enforcement actions taken by the FEC suggest just the opposite.

22. In order for a campaign to send monies to a vendor for services, the campaign itself would have to raise those funds initially, which it generally does through contributions from donors or by the candidate donating his or her own money to the campaign, for which there is no limit. There are a multitude of circumstances that could justify a campaign seeking a refund of payments to a vendor, including the need to make refunds to contributors, and that could justify a vendor believing a refund payment to a campaign would be permissible and even advisable to help a campaign cure its need to make refunds to contributors.

23. Although FEC guidance provides that vendor refunds might constitute contributions if the vendor does not offer them "in the ordinary course of business," Ex. A-3, I am not aware of any instance in which the FEC determined a vendor refund to be a contribution on this basis.

24. For example, in Advisory Opinion 1995-43 (Packwood), attached as Ex. A-4, the FEC stated that in certain circumstances, a vendor is permitted to refund an earlier payment from a campaign committee for services rendered, and such a refund would not be a contribution to the campaign committee. Specifically, in Packwood, the FEC allowed a law firm that had received payments of approximately $800,000 (of which approximately $600,000 was directly from the campaign committee) to refund $150,000 to the campaign committee. The FEC stated that this refund would not be considered a campaign contribution even though the previous disbursement had been in exchange for services already rendered by the law firm.

25. Additionally, as noted above in paragraphs 15–16, the FEC issued the guidance stating that "vendor refunds and rebates are considered offsets to operating expenditures" to be reported "on Form 3, Line 14," and "are not considered contributions." Ex. A-3. That guidance specifically directs the campaign Treasurer to report such payments as "refunds" or "rebates" and does not enumerate exceptions based on the facts set forth in the Superseding Indictment where such a refund could be considered a campaign contribution. Ex. A-3.

26. Lastly, I am not aware of any requirement of the FEC that vendors must segregate funds they receive from a campaign. For example, there is no requirement that a vendor that receives campaign funds must hold them in a separate account. Those funds can be combined or intermingled with other funds belonging to the vendor, as no rule or regulation of the FEC prohibits a campaign vendor from doing so.

27. This declaration is based upon my personal knowledge and is made by me in support of motions to dismiss filed in this matter.

This 25th day of May, 2018.

_____

Scott E. Thomas, Esq.